1998 OK 73

**STATE of Oklahoma, ex rel., OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Max M. BERRY, Respondent.**

No. SCBD 4245.

Supreme Court of Oklahoma.

July 7, 1998.

*ORDER*

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Attorney for Complainant, Oklahoma City, Oklahoma.

Gary A. Rife, Perry, Rife, Walters, Sullivan & Cain, Oklahoma City, Oklahoma, Attorneys for Respondent.

Kenneth E. Holmes, Ponca City, Oklahoma, Attorney for Respondent.

SUMMERS, V.C.J.

¶ 1 The Oklahoma Bar Association filed a three-count complaint against Max M. Berry, alleging violations of the Rules of Professional Conduct. A hearing was held in which Berry represented himself. The trial panel agreed that he had violated the Rules on all three counts, and recommended a 45–day suspension. Berry then filed an application to reopen the case to present further evidence as to his mental and emotional state at the time of the incidents. The Bar consented to the reopening, and this Court remanded for an additional hearing. After that hearing the trial panel filed an additional report, affirming its first recommendation.

¶ 2 In a disciplinary proceeding this Court has original jurisdiction and reviews the record *de novo*. *State ex rel. Oklahoma Bar Association v. Giessmann,* 1997 OK 146, 948 P.2d 1227 (Okla.1997). Neither the findings of fact nor the recommendations of discipline made by the Professional Responsibility Tribunal are binding on this Court. *Id.; State ex rel. Oklahoma Bar Association v. Holden,* 1996 OK 88, 925 P.2d 32, 36 (Okla.1996). With these standards in mind we review the allegations.

## COUNT 1

¶ 3 Respondent represented Pamela Griffith in a divorce action in 1990. he represented her for about six months, during which time he prepared a proposed decree of divorce and filed a temporary order. Pamela discharged him and retained new counsel. Pamela and her husband were divorced in 1991, but remarried in 1993. A second di-

vorce action was commenced in 1996, and this time Respondent represented Pamela's husband. Pamela contacted Respondent by letter, telling him that she thought it was inappropriate for him to represent her husband after representing her. Respondent did not obtain her consent. At the disciplinary hearing, Pamela testified that she was concerned because much of the couple's assets were the same. She was also concerned about the custody of her three children which had been an issue in the prior divorce.

■ ¶ 4 The Bar Association alleges that Respondent's conduct violated Rule 1.9(a) and (c) of the Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A.[1] Rule 1.9(a) states as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

We find that Respondent violated this Rule. The Comments for Rule 1.9 state that disqualification of an attorney from subsequent representation is for the benefit of the former client. It protects the client's feeling of loyalty owed by the attorney. It can be waived only by the client. While we recognize that approximately six years had passed since Respondent's representation of Pamela, Rule 1.9(a) does not set time limits. It requires consent from the former client. Respondent does not allege that he obtained Pamela's consent to represent her husband, and Pamela testified that she did not give her consent.

■ Rule 1.9(c) states:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

A thorough review of the transcript and record does not support a finding of a violation of Rule 1.9(c). The parties stipulated that Respondent did not reveal any information he learned in the course of his representation of Pamela. The client did not state any information that had been divulged as a result of Respondent's representation of her husband. Respondent stated that he had not divulged any client confidences. We find that this allegation of professional misconduct is not supported by clear and convincing evidence. *Giessmann,* at 1229 (attorney misconduct must be shown by clear and convincing evidence).

### COUNT 2

¶ 5 Jennifer Hankins, twenty years old, filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Oklahoma. She filed the petition *pro se* after having someone else complete the bankruptcy form on her behalf. She was not knowledgeable in the law.

¶ 6 Respondent represented a creditor of Hankins, and filed a collection action against her in Muskogee County District Court. Hankins and Respondent appeared for a hearing at the District Court, and Hankins told the court she had filed for bankruptcy. The court immediately excused the Respondent and Hankins. Respondent, Hankins and Hankins' mother went to a private area of the courthouse, where Respondent proceeded to look over her papers filed in the bankruptcy. He did not at any time explain to Hankins or her mother that he represented a party adverse to her. He told her that her papers were incorrectly completed and that she would be more properly served by filing a Chapter 13 bankruptcy, but did not tell her to seek the advice of independent

---

1. The trial panel's report states that the Bar Association alleged a violation of Rule 1.9(b). We do not find any such allegation in the complaint and it was not briefed by the parties at the hearing level or on appeal.

counsel. Respondent told her that he could have her bankruptcy converted to a Chapter 13. He continued by telling Hankins that he was the only attorney "in the area" that did Chapter 13 bankruptcies and that he thought he could help her. She sent him $300.00 as a retainer shortly after the meeting. He admits that he represented her.

¶ 7  At the hearing the bankruptcy trustee for the Northern District testified that Hankins told him she had hired an attorney. Upon his inquiry she explained how she met Respondent. The trustee became concerned because of the obvious conflict of interest, and because it was clear from Hankins' finances that she would not be able to meet the payments expected under Chapter 13's reorganization plan. The trustee also testified that the papers she filed in the bankruptcy were more than adequate, and better than many filed by attorneys. He also explained that no creditor has the legal right to force the conversion of a Chapter 7 to a Chapter 13 bankruptcy, as the bankruptcy code did not allow this. Hankins was ultimately granted a Chapter 7 bankruptcy which was not disputed by any of her creditors.

¶ 8  Respondent testified that he returned Hankins' money to her. He also testified that he had represented Hankins' creditor for approximately five years, and that he was paid not only a retainer but a percentage of the amount he collected. He did not tell Hankins that it was to his benefit, and not to her benefit, if she were to convert her bankruptcy to a Chapter 13, as it would be more favorable to the creditor. He did not explain to her that he represented an adverse party.

¶ 9  The Oklahoma Bar Association alleged that these actions violated Rules 1.7, 1.8(b), 4.1(a), 4.3, 7.1, 7.3(a) and 8.4(c). The PRT agreed, finding violations of all but Rule 1.8(b). The PRT further stated that Respondent's actions amounted to a violation of the bankruptcy code's automatic stay provision as it was an attempt to collect a debt.

■  Rule 1.7(a) states:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Respondent directly violated this provision. He admits that he did not obtain the consent of both clients. He did not explain the conflict of interest to Hankins. "Loyalty is an essential element in the lawyer's relationship to a client." Comments, Rule 1.7, Rules of Professional Conduct.

■  ¶ 10  Rule 1.8(b) states that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3" Although Respondent threatened to use information he discovered during their discussion against Hankins, this was done prior to her hiring him. Ultimately the information was not used to her detriment. We find no violation of Rule 1.8(b).

■  ¶ 11  Rule 4.1 requires that an attorney refrain from knowingly making a false statement of "material fact or law to a third person." Respondent practiced bankruptcy law. He was well-versed in its intricacies. Although there was a dispute as to his exact language, the gist of his statement to Hankins was that he could force her to convert her Chapter 7 bankruptcy to a Chapter 13 bankruptcy. According to the bankruptcy trustee, the bankruptcy code does not give a creditor the right to force someone to change from a Chapter 7 to a Chapter 13. The trustee continued by stating that Chapter 13 was unsuitable for Hankins because her income was not sufficient so as to permit her to make payments toward a reorganization plan. We find that Respondent violated Rule 4.1. *State ex rel. Oklahoma Bar Association v. Leigh*, 1996 OK 37, 914 P.2d 661 (Okla. 1996) (lawyer's use of term "CPA" on letterhead and business card created false impression as to qualification and unjustified expectations about the results he could obtain, and thus violated Rule 4.1).

■  ¶ 12  At no time did Respondent advise Hankins to obtain the advice of an independent lawyer. Rule 4.3 states:

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. A lawyer shall not give advice to such a person other than the advice to secure counsel, if the interest of such person are, or have a reasonable possibility of being, in conflict with the interest of the client.

Clearly there was a conflict of interest between Respondent and Hankins, as he had filed suit against her on behalf of his client. He did not explain this to her although he admitted at the hearing that he understood Hankins' interests would be adverse to those of his client. Respondent violated Rule 4.3.

¶ 13 Rule 7.1 prohibits a lawyer from making false or misleading statements about the lawyer's services. A communication is false or misleading if it "contains a material misrepresentation of fact or law." The Bar Association alleges that Respondent violated this Rule by telling Hankins he was the only attorney in the area that did Chapter 13 bankruptcies when in fact there were several other attorneys who did this type of work. The testimony was unclear in this regard. Hankins did not have a clear memory about his statement, but was under the impression that he was the only attorney who could help her. Respondent stated that he told her that only a few attorneys in the area handled Chapter 13 bankruptcies. With this conflicting testimony, and the vagueness of Hankins' memory, we do not find that a violation has been proven by clear and convincing evidence.

¶ 14 Rule 8.4 prohibits an attorney from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." Respondent misrepresented to Hankins that her bankruptcy papers were incorrectly completely and that she could be forced to convert her bankruptcy to a Chapter 13. The bankruptcy trustee testified that Hankins' best interests required that she file a Chapter 7 bankruptcy and that her papers were adequately completed. Although Respondent attempted to show that the papers were inadequate, the trustee testified that not only he believed them to be adequate, but that upon review by another trustee, the second trustee

concurred in his opinion. The testimony shows that Respondent deliberately misled Hankins in order to gain advantage in his representation of her creditors or possibly to gain her as a client. It would have been of direct benefit to him and to his client/creditor for her to convert to a Chapter 13 bankruptcy, as he would then have been able to obtain at least some reimbursement for the debt owing. We find that he violated Rule 8.4. *See State ex rel. Oklahoma Bar Association v. Lacoste*, 1991 OK 51, 813 P.2d 501 (Okla. 1991) (misrepresentation by attorney warrants one year suspension).

## COUNT 3

¶ 15 During the course of the investigation of the allegation against Respondent, the Bar Association sought information from Respondent. With regard to whether he had spoken with his client, the creditor of Hankins, about representation of an adverse party, Respondent stated that he was "checking with [his] client." He later admitted that he checked with no one. He also stated that Hankins' papers were incorrectly completed. This was determined to be incorrect.

¶ 16 We find that these statements violated Rule 8.1(a) which prohibits an attorney from knowingly making a false statement and Rule 8.4(a) which prohibits an attorney from engaging in fraud, deceit or misrepresentation. *State ex rel. Oklahoma Bar Association v. Thompson*, 1993 OK 144, 864 P.2d 339 (Okla.1993) (lawyer who knowingly makes a false statement to the Bar Association during the course of a disciplinary proceeding has violated Rules 8.4 and 8.1).

## ENHANCEMENT AND MITIGATION

¶ 17 Respondent received a private reprimand from the Professional Responsibility Commission in 1986 for representing a wife in a divorce proceeding and subsequently representing her ex-husband in the same case when the wife sought garnishment. As noted by the PRT, this conflict of interest is similar to Count 1 of the present complaint.

¶ 18 With regard to mitigation, none was presented at the first hearing. However, the case was reopened and a second hearing was

held in which Respondent was represented by counsel. At this hearing several witnesses, including Respondent's psychiatrist, testified that Respondent was suffering from chronic depression at the time these incidents occurred. Prior to 1996 Respondent had been hospitalized for depression. He has taken and continues to take several medications. After a time the medications cease to work, and they must be changed and adjusted. During 1996 Respondent had faced several personal crises, both financial and emotional.

¶ 19 We note that during the first hearing Respondent's attitude was cavalier and at times belligerent. He was defensive and unwilling to accept any responsibility for his actions, denying that he had committed any serious wrongdoing. However, at the second hearing his attitude had changed. He was apologetic for his behavior and was willing to admit that his conduct had not complied with the Rules of Professional Conduct. In a statement to the trial panel Respondent's attorney said that Respondent had not told anyone, including his wife of twenty-three years, of the pending disciplinary proceeding until after the first hearing. Other personal crises had also been kept secret by Respondent. As pointed out by the psychiatrist, this is a typical response by a person who is chronically depressed.

¶ 20 Evidence was presented to show that Respondent was 65 years old and had practiced law for over thirty years. He had served as a municipal judge for two small Oklahoma communities. There were numerous letters presented on his behalf from attorneys who practiced in surrounding community. All thought him to be a very competent lawyer. Many commented on his charitable work with the Red Cross.

## DISCIPLINE

¶ 21 We find that Respondent's conduct violated Rules 1.7, 1.9(a), 4.1, 4.3, 8.1 and 8.4. He has represented clients, knowing of a conflict of interest, without informing the client on one occasion and without the permission of a former client on a second occasion. He misled a client and the Bar Association. We find that Respondent has been disciplined on one prior occasion. We also note that Respondent's actions did not result in financial harm to either Hankins or Griffith, and did not lead to detrimental results in the legal proceedings. Taking into consideration the mitigating factors presented, we find that as a result of these numerous violations Respondent shall be suspended for a period of four months. *See State ex rel. Oklahoma Bar Association v. Williams,* 1995 OK 130, 911 P.2d 905 (Okla.1995) (attorney's violation of the conflict of interest rule and failing to keep client property separate warranted suspension for six months); *State ex rel. Oklahoma Bar Association v. Blackburn,* 1991 OK 35, 812 P.2d 379 (Okla.1991) (attorney's failure to file a brief in a criminal case and conflict of interest in divorce case warranted public censure in light of mitigating evidence).

¶ 22 The Oklahoma Bar Association has filed a motion to assess costs in the amount of $2,487.76. Respondent has agreed to the payment of these costs. We hereby assess costs in the amount of $2,487.76 pursuant to Rule 6.16, Rules Governing Disciplinary Proceedings, to be paid within 90 days from the day this opinion becomes final.

¶ 23 KAUGER, C.J., SUMMERS, V.C.J., and SIMMS, ALMA WILSON, and WATT, JJ., concur.

¶ 24 HODGES, J., with whom HARGRAVE, J. joins, concurs in part, dissents in part.

I would affirm the 45 day suspension by the Professional Responsibility Tribunal.

¶ 25 OPALA, J., not participating.

¶ 26 LAVENDER, J., disqualified.