2002 OK 32

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Orven Ronald McGEE, Respondent.**

**No. SCBD 4617.**

Supreme Court of Oklahoma.

April 23, 2002.

Rehearing Denied May 20, 2002.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Orven Ronald McGee, Ponca City, OK, Respondent, pro se.

BOUDREAU, J.

### I. Procedural History

¶ 1 The Complainant Oklahoma Bar Association (OBA) brought Rule 6 disciplinary proceedings against Respondent attorney, Orven Ronald McGee, alleging two counts of professional misconduct. Respondent was admitted to practice law in Oklahoma in 1991 and was so licensed at all times relevant to the events addressed herein. Respondent's official roster address is P.O. Box 627, Ponca City, OK 74602.

¶ 2 The Professional Responsibility Tribunal (Tribunal) held a hearing on July 24, 2001, where Respondent stipulated to violations of Rules 1.1, 1.2, 1.3, 1.6, and 1.7 of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991 Ch. 1, App. 3–A, and Rule 1.3 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.1991 Ch. 1, App. 1–A. The Tribunal noted for purposes of enhancement of discipline that Respondent has previously received two private reprimands from the Professional Responsibility Commission (Commission). Respondent received a private reprimand on May 22, 1998, for allowing the statute of limitations to expire on a client's case and on June 23, 2000, for filing a motion and not properly mailing it to the opposing side. Upon these findings, the Tribunal recommended Respondent be suspended from the practice of law for six (6)

months. The OBA recommended Respondent be publicly censored.

## II. Standard of Review

█ ¶ 3 We review the entire record *de novo* to determine if the allegations of misconduct are established by clear and convincing evidence. *See State ex rel. Oklahoma Bar Ass'n v. Thomas,* 1995 OK 145, 911 P.2d 907; Rule 6.12(c), RGDP.

## III. Count I, Lee Complaint

¶ 4 The first complaint was brought by Tabitha Lee whom Respondent represented in an uncontested divorce. Ms. Lee's mother paid the Respondent a retainer of $800.00 for his services in the divorce case. Respondent did not obtain a written contact for his services. After the divorce was granted, Respondent refused to file the decree because he claimed Ms. Lee owed him additional attorney fees. Ms. Lee refused to pay the additional fees maintaining the initial $800.00 payment was her total fee. Respondent placed the unfiled decree in his filing cabinet thinking, according to his testimony, that Ms. Lee would pay the fees within a week or two and that he would then file the decree. Ms. Lee never paid the additional fees and Respondent temporarily forgot about the unfiled divorce decree. However, Ms. Lee contacted Respondent several times thereafter requesting a file-stamped copy of her divorce decree. Respondent informed her that she would not receive the decree until the balance of her attorney fees was paid in full.

¶ 5 In October 2000, Ms. Lee contacted Respondent and told him she had contacted the OBA to inquire about filing a grievance. Respondent then met with Ms. Lee and provided her a filed-stamped copy of her divorce decree. Respondent also waived further attorney fees. By the time Respondent filed the divorce decree, a period of twenty-seven months had elapsed from the date the divorce was granted.

¶ 6 Ms. Lee reviewed the decree and discovered, by its terms, that child support was payable on the first day of the month following the filing of the decree rather than at the time the divorce was granted. To correct this deficiency, Respondent hired another attorney to file a nunc pro tunc decree.

¶ 7 Ms. Lee filed a formal complaint with the OBA. The OBA contacted Respondent who fully cooperated in the investigation of the complaint. The parties have stipulated that Respondent's actions violated the following rules: Rules 1.1 (competence), 1.2 (scope of representation), 1.3 (diligence) of the ORPC and Rule 1.3 (acts contrary to prescribed standards of conduct) of the RGDP.

[2, 3] ¶ 8 Professional competence—acting promptly and diligently on a matter—is a mandatory obligation imposed upon attorneys. *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 1993 OK 91, 863 P.2d 1136, 1145. Anything less is a breach of a lawyer's duty to serve his client. *Id.* We agree the evidence establishes, by a clear and convincing standard, that Respondent failed to act with reasonable competence, diligence and promptness in representing Ms. Lee in violation of Rules 1.1 and 1.3, ORPC. Such actions by Respondent were contrary to prescribed standards of conduct and are grounds for discipline under Rule 1.3, RGDP.

¶ 9 We further find Respondent violated Rule 1.2, ORPC, which imposes upon attorneys a duty to abide by a client's decisions concerning the objectives of representation. The scope of Respondent's representation was clear—to obtain a divorce and file the decree. Ms. Lee consistently requested a copy of the filed divorce decree. Respondent refused. When comparing Respondent's conduct with the duties imposed on him, we agree the evidence establishes, by a clear and convincing standard, that his actions violated Rule 1.2. Such actions by Respondent were contrary to prescribed standards of conduct and are grounds for discipline under Rule 1.3, RGDP.

## IV. Count II, Ortega Complaint

█ ¶ 10 Juanita Ortega filed the second complaint. She and several of her co-workers were arrested at their place of employment. Their employer asked Respondent to represent the employees on criminal charges arising out of the incident. At the first court appearance, Respondent realized he had pre-

viously represented Ms. Ortega's mother, June Henderson, and her brother, William Ortega. Respondent informed Ms. Ortega that he did not want to enter an appearance until he discussed this issue with her. He asked her to meet him at his office later that week.

¶ 11 Respondent subsequently met with Ms. Ortega and informed her that approximately one to two years prior he had represented her mother and her brother in a case involving the guardianship of Ms. Ortega's minor children. Respondent had filed a petition with the court seeking guardianship of Ms. Ortega's children but had never obtained service on her. According to Respondent, when Ms. Henderson and Mr. Ortega began to disagree on the guardianship, Respondent informed them orally that he was not going to pursue the matter any further. However, Respondent never dismissed the case or withdrew his representation of Ms. Henderson and Mr. Ortega.

¶ 12 After Respondent explained the situation, Ms. Ortega signed a form prepared by Respondent which purportedly allowed him to represent both Ms. Ortega and her mother and waived any claim of a conflict of interest. Ms. Ortega asked Respondent not to tell her mother about the arrest or criminal charge. Respondent assented to this request. Respondent provided representation to Ms. Ortega on the criminal case which was completed in late 1999. Respondent never disclosed the potential conflict to Ms. Henderson or Mr. Ortega nor requested a waiver from either of them.

¶ 13 Despite informing Ms. Ortega that he would not pursue the guardianship any further and despite his assurances to her that he would not discuss her criminal case with her mother, Respondent's office prepared the following letter which came into the hands of Ms. Henderson.

RE: ORTEGA GUARDIANSHIP— JUNE HENDERSON

TO WHOM IT MAY CONCERN:

Please be advised that our firm represents Mrs. June Henderson in the above-referenced cause of action. We have asked for a court date to hear the Letters of Guard-ianship but due to jury trials, a date has not been set.

This case has been on going for some time due to the inability to serve notice on the natural mother. She has avoided service by moving to different residences for a period of time. At the current time, our judge is in jury trial and has been in session in Newkirk, Ponca City and Perry. Please note also that this firm does not represent Juanita Ortega in ANY case at all. She was a party to a criminal case where we represented a club where employees were arrested for indecent exposure. Ms. Ortega signed a Waiver in this instance.

Dee Pettay for

O. Ronald McGee

Attorney for Petitioner

¶ 14 Respondent testified before the Tribunal that he did not instruct his secretary to prepare the letter nor was he aware that she had prepared the letter. He insisted he was out of the office on the day the letter was prepared. He testified that his secretary never informed him about the letter, although a copy was placed in Ms. Henderson's file.

¶ 15 The parties have stipulated that Respondent's actions violated Rules 1.2 (scope of representation), 1.6 (confidentiality of information), 1.7 (conflict of interest: general rule) of the ORPC and Rule 1.3 (acts contrary to prescribed standards of conduct) of the RGDP.

¶ 16 A fundamental principle in the attorney-client relationship is that the lawyer maintain confidentiality of information relating to the representation. This principle applies not merely to matters communicated in confidence by the client, but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information unless the client consents after consultation. Furthermore, a lawyer is duty-bound to supervise the work done by lay personnel and stands ultimately responsible for work done by all nonlawyer staff. See State ex rel. Oklahoma Bar Ass'n v. Taylor, 2000 OK 35, 4 P.3d 1242. The evidence establishes, by a clear and convincing

standard, that Respondent, through his secretary's actions, revealed client information in violation of Rule 1.6, ORPC. Such actions by Respondent were contrary to prescribed standards of conduct and are grounds for discipline under Rule 1.3, RGDP.

¶ 17 Respondent's conduct also violated Rule 1.7, ORPC, relating to conflicts of interest. The rule provides that a lawyer shall not represent a client if the representation of that client will be directly adverse to another client.[1] Respondent violated this canon when he agreed to represent Ms. Ortega in the criminal matter when he was, concurrently, representing her mother and brother in a guardianship seeking custody of Ms. Ortega's children. He undertook the representation without disclosing the conflict or seeking a waiver from Ms. Henderson or Mr. Ortega. It should have been immediately apparent to Respondent that any information he acquired representing Ms. Ortega could conceivably be useful to Ms. Henderson and Mr. Ortega in their effort to seek custody of Ms. Ortega's children. Furthermore, Respondent's promise to Ms. Ortega to withhold information about the criminal charge from Ms. Henderson and Mr. Ortega severely limited his ability to effectively represent them in the custody action.

¶ 18 We are not persuaded by Respondent's explanation that he did not intend to pursue the guardianship any further. His explanation in this regard is belied by the letter prepared by his office which states "[p]lease be advised that our firm represents Mrs. June Henderson in the above-referenced cause of action. We have asked for a court date to hear the Letters of Guardianship but due to jury trials, a date has not been set." If Respondent did not wish to pursue the guardianship he was obliged to either dismiss the case or withdraw as the attorney of record.

¶ 19 We find the record establishes by clear and convincing evidence that Respondent's conduct directly violated Rule 1.7, ORPC. Such actions by Respondent were contrary to prescribed standards of conduct

and are grounds for discipline under Rule 1.3, RGDP.

¶ 20 Although Respondent has stipulated to violating Rule 1.2, ORPC, we have a duty to review the evidence *de novo* to determine if the allegations of misconduct are established by clear and convincing evidence. Stipulations of the parties and findings of fact and recommendations of the Tribunal are advisory, being neither binding nor persuasive. *See State ex rel. Oklahoma Bar Ass'n v. Doris*, 1999 OK 94, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Arthur*, 1999 OK 97, 991 P.2d 1026. Rule 1.2 provides a lawyer shall abide by his client's decisions concerning the objectives of representation subject to certain qualifications. The record does not establish that Respondent failed to abide by his client's decisions concerning the objectives of representation. We find this allegation of professional misconduct is not supported by clear and convincing evidence.

### V. Enhancement

¶ 21 For purposes of enhancement of discipline the OBA asserted that Respondent previously received two private reprimands. He was reprimanded on May 22, 1998, for missing a statute of limitation and again on June 23, 2000, for filing a motion and not properly mailing it to the opposing side. This Court may consider previous discipline in fashioning the degree of discipline to be imposed for current misconduct. Rule 1.7, RGDP.

### VI. Mitigation

¶ 22 There are several factors present in this bar matter that bear on the issue of mitigation. Respondent cooperated throughout the course of the investigation and prosecution of the matter. Respondent freely admitted his conduct did not comply with provisions of the ORPC and RGDP and accepts full responsibility for his actions and those of his secretary. He apologized for the shortcomings of his behavior.

---

1. The rule provides a limited exception if the lawyer reasonably believes the representation will not adversely affect the relationship with the other client and each client consents after consultation.

¶ 23 Respondent's actions did not result in financial harm to his clients nor did they adversely impact the legal proceedings. With respect to Ms. Lee, Respondent testified she received child support from her ex-husband, albeit sporadically, from the date the divorce was granted. Testimony further established the decree was corrected by another attorney, at Respondent's cost, and that Ms. Lee's ex-husband did not object to the filing of the nunc pro tunc decree.

¶ 24 As to Respondent's failure to maintain Ms. Ortega's information confidential, testimony before the Tribunal showed Ms. Ortega's mother knew of the arrest independent of the letter prepared by Respondent's office. Nevertheless, Respondent accepts full responsibility for his failure to supervise his secretary to the extent required to have prevented this misconduct.

¶ 25 Finally, Respondent testified that during the time in question his marriage was deteriorating and ultimately terminated in divorce. Also, he was being treated for depression.

¶ 26 Mitigating circumstances may be considered in evaluating an attorney's conduct and assessing the appropriate discipline. *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2000 OK 35, 4 P.3d 1242, 1255.

### VII. Discipline

¶ 27 This Court possesses original and exclusive jurisdiction in bar disciplinary proceedings. Rule 1.1, RGDP. The Tribunal's findings, conclusions of law, or recommendations of discipline are not binding on this Court. *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, 914 P.2d 644, 648. "The ultimate responsibility to impose discipline in a case before this court is ours alone." *Id.*

¶ 28 In imposing discipline, our purpose is not to punish the involved attorney, but to inquire into his continued fitness to practice law with a view to safeguarding the public, the courts and the legal profession. *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 1992 OK 164, 848 P.2d 543, 546; *State ex rel. Oklahoma Bar Ass'n v. Badger,* 1995 OK 113, 912 P.2d 312; *State ex rel.*

*Oklahoma Bar Ass'n v. Mayes,* 1999 OK 9, 977 P.2d 1073. With that purpose in mind, we must weigh or balance a myriad of factors in crafting an appropriate discipline, some that warrant increasing the severity of the discipline to be imposed and others that mitigate the severity.

¶ 29 While Respondent's clients may not have been appreciably harmed by his conduct, his violations of the rules of professional conduct were serious and detrimentally impacted the administration of justice. Particularly troubling was his concurrent representation of Ms. Ortega, Ms. Henderson and Mr. Ortega. Conflict rules are designed to protect a client from a lawyer unable to undertake effective advocacy because of some adverse or conflicting interest. An attorney must be able to advocate for his client without conflicting loyalty to another client.

¶ 30 Respondent's admitted violations reflect, at a minimum, a misunderstanding and, at worst, a disregard of a lawyer's fundamental duty of loyalty to one's client. This Court has frequently chosen to impose some form of suspension for comparable violations. *See State ex rel Oklahoma Bar Ass'n v. Berry,* 1998 OK 73, 969 P.2d 975 (attorney's violation of the conflict of interest rule and his conduct in knowingly making false statements warranted four month suspension); *State ex rel Oklahoma Bar Ass'n v. Wallace,* 1998 OK 65, 961 P.2d 818 (attorney's violation of the conflict of interest rule, business dealings with a client and failing to adhere to the fiduciary standard of conduct obligatory on a trustee warranted two year suspension); *State ex rel Oklahoma Bar Ass'n v. Williams,* 1995 OK 130, 911 P.2d 905 (attorney's violation of the conflict of interest rule and failing to keep client property separate warranted suspension for six months). However, in *State ex rel Oklahoma Bar Ass'n v. Blackburn,* 1991 OK 35, 812 P.2d 379, an attorney's failure to file a brief in a criminal case and violation of the conflict of interest rule in a divorce case warranted public censure in light of mitigating evidence.

¶ 31 Having taken into consideration all circumstances surrounding Respondent's misconduct, including extenuating and mitigating factors, his cooperation with the OBA,

and his remorse, we conclude Respondent's serious violations of the ORPC and the RGDP warrant a four (4) month suspension together with the costs of this proceeding.

### VIII. Conclusion

¶ 32 For the reasons set out in this opinion, Respondent is suspended from the practice of law for four (4) months and is ordered to pay the costs of the investigation and disciplinary proceedings in the amount of $467.01 within ninety (90) days of the effective date of this opinion, pursuant to Rule 6.16 of the RGDP. Respondent's suspension will begin on the effective date of this opinion.

¶ 33 **RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF FOUR (4) MONTHS FROM THE EFFECTIVE DAY OF THIS PRONOUNCEMENT; AND COSTS IMPOSED.**

¶ 34 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, SUMMERS, WINCHESTER, JJ., Concur.

¶ 35 OPALA, J., Concurs in Part and Dissents in Part.

I would suspend Respondent's license for six (6) months.