2004 OK 41

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Cherie Michelle CHAPPELL, Respondent.**

**SCBD No. 4825.**

Supreme Court of Oklahoma.

June 8, 2004.

---

Nathan A. Lockhart, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, attorney for complainant State of Oklahoma ex rel. Oklahoma Bar Association.

Cherie M. Chappell, Chappell Law Firm, PLLC, Edmond, OK, pro se respondent.[1]

---

1. Identified herein are only those counsel for the parties whose names appear on the briefs.

WINCHESTER, J.

¶ 1 The OBA filed a complaint against respondent, a licensed attorney in Oklahoma, pursuant to Rule 6, RGDP, 5 O.S.2001, Ch. 1, App. 1–A[2]. The complaint states one count, that represents a grievance filed by a federal judge in Kansas, before whom respondent appeared. In its Trial Panel Report, the Trial Panel of the Professional Responsibility Tribunal (the PRT) made Findings of Fact and Conclusions of Law. The PRT found that respondent's conduct warranted enhancement of punishment, and unanimously recommended a one-year suspension of respondent's license and that she be responsible for costs of the proceedings.

¶ 2 The record contains no evidence that respondent suffered from clinical depression or other mental condition that might be considered for purposes of mitigation, or from any physical disability that might have caused or precipitated her harmful conduct. The record also is devoid of any evidence respondent expressed remorse for her actions and for the difficulties her client endured because of her conduct.

## COUNT I

¶ 3 Prior to passing the Oklahoma Bar Exam, respondent began work for an attorney named W. Dan Nelson, on several cases, including a case involving a car accident in Peabody, Kansas. The potential plaintiff in this case was Carole Ellen Teaford. Nelson had entered into a contingency fee contract with Teaford in September, 1999, to pursue a claim for her injuries arising out of the rollover accident. He previously represented Teaford in a criminal matter. Respondent was not a party to this contingency fee contract with Teaford, nor was she named in said contract.

¶ 4 Respondent passed the bar exam and was admitted to the OBA. She continued to assist Nelson on Teaford's case, ultimately filing an action on her behalf, along with Nelson, on January 10, 2001. The case was filed in the United States District Court for the District of Kansas. Subsequently, it was transferred to the U.S. District Court for the Southern District of Indiana, where it became a part of the Bridgestone/Firestone Multi–District Litigation, Master File No. IP–00–9373–C–B/S, MDL No. 1373.

¶ 5 Respondent helped in drafting the petition, and signed it. Other names appearing on the petition were: Rex A. Sharp, Gunderson, Sharp, Trout & Rhein, P.C., Prairie Village, Kansas, and Of Counsel: W. Dan Nelson, Edmond, Oklahoma. These two names, along with respondent's, appeared immediately above the words: ATTORNEYS FOR PLAINTIFF. At the bottom of the page appear the words: ATTORNEY'S LIEN CLAIMED and JURY TRIAL DEMANDED. At the time she signed this petition, respondent possessed a temporary license in Kansas.

¶ 6 The evidence before us shows that subsequently, respondent began to draft proposed answers to the defendants' interrogatories and requests for production. These answers never were filed or provided to the defendants, because the case settled before completion of discovery. At this time, respondent also represented the plaintiff of the rollover case, Teaford, in a social security disability claim. Three months after the rollover case was filed, respondent received notice she failed the Kansas Bar Exam. As a result, she no longer could practice law in Kansas and was forced to withdraw from the rollover case. The court granted her motion to withdraw on April 30, 2001. Respondent continued to represent Teaford on the social security disability claim.

¶ 7 With respondent's permission, the evidence shows that Nelson retained two Oklahoma attorneys to assist him in the rollover case. These lawyers, Richard Denney and Lydia Barrett, had settled several such cases on behalf of other clients. On January 6, 2002, Teaford settled with Ford/TRW and on January 18, 2002, she settled with Bridgestone/Firestone. Following settlement, a fee dispute arose between Nelson and respondent. On January 17, 2002, respondent sent a written request of 10% of the attorney fees, and on January 21, 2002, she sent another

**2.** Rule 6, Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal, sets forth the procedures applicable to such proceedings.

written request, this time, of 12.5% of the attorney fees, although respondent had no written fee agreement with Teaford or with Nelson, regarding the rollover action. The record reveals that Nelson offered respondent $7500.00 in attorney's fees, and later offered respondent $10,000.00 in attorney's fees, for her work on the rollover case.

¶ 8 To resolve the attorney fee dispute, Nelson filed a motion in the federal court in Indiana where the multi-district litigation was pending, February 5, 2002. In her response thereto, filed February 12, 2002, respondent contended that Nelson had "misled the Court by failing to disclose important relevant facts, by misstating actual facts, and by failing to state the law and applicable Rules of Professional Conduct in their entirety." Respondent also stated therein that Nelson "flatly lies to the court" and requested 25% of the attorney fees in the rollover case. Respondent filed a "Motion to Enforce Attorney Lien and Brief in Support" the same day, wherein she requested attorney fees.

¶ 9 On the same day, February 12, 2002, respondent mailed letters to Nelson and the other attorneys involved in the rollover action, attaching thereto a motion for Rule 11 sanctions against Nelson; an application for emergency relief and a motion to set aside judgment for fraud. She filed the latter motion to set aside, on February 19, 2002, alleging therein that Nelson "intentionally, fraudulently, and deliberately withheld and denied relevant information" from her regarding settlement agreements, and that Nelson had attempted to hide the very fact a settlement had been achieved. The Rule 11 motion contained language referring to Nelson's conduct as "egregious, unlawful, immoral, and unethical."

¶ 10 Respondent's father, Kenneth R. Poland, an attorney licensed in Texas, then wrote a series of letters to all parties involved, the first of which was dated February 13, 2002, and advising that he intended to enter the case as respondent's attorney, to collect attorney fees to which she was entitled. However, respondent filed an application to proceed *pro se* on February 13, 2002. In the midst of this strife, Teaford requested by letter that respondent withdraw from the social security disability case, on February 15, 2002. Respondent complied.

¶ 11 Poland's second letter was dated February 18, 2002 and entitled: "Re: Pit Fighting 101–Do Your Homework! Did Anyone Check Out the Criminal Records of Plaintiff Carole Ellen (Long) Teaford?" This letter refers to a felony criminal indictment for several counts of child molestation and suggests that Nelson succeeded in getting the charges dismissed because of Teaford's "injuries" in the rollover case. The letter implies that Teaford staged the accident and her injuries, to avoid criminal charges.

¶ 12 Poland's third letter, February 19, 2002, stated he had contacted the relevant District Attorney's Office about the Teaford rollover accident and monetary settlement, and that the D.A. would notify the alleged molestation victim. The letter also stated, "Newspapers have been notified so they can do follow ups if they desire." During a hearing before the federal judge in Kansas, (Judge Monti L. Belot, who filed the grievance against respondent with the OBA,) on November 4, 2002, respondent testified that she had given her permission to Poland, her father, to send these three letters.

¶ 13 Also on February 19, 2002, respondent signed on her own behalf, and then filed with the court, a "Motion to Make the Court Aware of Possible Fraud Upon the Court and Defendants in this Case Perpetrated by Plaintiffs and W. Dan Nelson." Therein, respondent references the criminal case against Teaford, her former client, alleging felony counts of child molestation and abuse, and further references the possibility of "an intentional incident" and contends that "As a result of the auto accident, Plaintiff [Teaford] was able to avoid a jury trial and the criminal felony charges were later dismissed because of her alleged injuries." The record reveals that respondent learned of the criminal charges previously, through Teaford herself. Respondent's reference to the charges in correspondence and motions constitutes a violation of Rule 1.6, ORPR, codi-

fied at 5 O.S.2001, Ch. 1, App. 3–A[3].

¶ 14 On the same day, respondent filed a "Motion to Strike Nelson's Motion for Hearing on Attorney Fee Conflict and Nelson's Application and Supplemental Motion," stating therein "That the two affidavits presented by W. Dan Nelson are evidence of Mr. Nelson's incompetence and the negligent work done by Mr. Nelson's Office" and that the "two attempts at Affidavits are misleading and are misrepresenting facts to the Court and are controverted by Movant's attached controverting Affidavit."

¶ 15 Judge Sarah Evans Barker of the U.S. District Court for the Southern District of Indiana, remanded the entire matter to the Kansas U.S. District Court Judge, Monti L. Belot, on March 4, 2002. On March 22, 2002, Nelson informed respondent by letter that her "Motion to Make the Court Aware of Possible Fraud Upon the Court" was frivolous. Attached thereto was a letter from the District Attorney involved in the criminal matter against Teaford, stating the reasons why he had dismissed the case against her. These reasons were independent of the rollover accident, and independent of Teaford's injuries from the accident. Nelson requested that respondent withdraw her motion, based upon this evidence. She failed to do so.

In fact, that same day, March 22, 2002, respondent filed a "Response to Court's Suggestion for Remand and Defendant's Response Thereto" wherein she reiterated her belief a fraud had occurred and that the accident was staged. She even asserted therein that her father "has recently found documents in the public record that show Mrs. (Long) Teaford's criminal charges were dismissed because of her injuries in the August 19, 1999 crash, which is presently before this Court. . . . Dan Nelson apparently has a history of engaging in deception and artifice." Respondent attached the Affidavit of Probable Cause and the Amended Information from the criminal case against Teaford.

¶ 16 Three days later, respondent filed yet another motion for sanctions against Nelson, alleging he unlawfully had withheld attorney fees. She then filed a reply to Nelson's responses on April 13, 2002, still referencing the criminal matter against Teaford, in spite of the evidence provided to her from the District Attorney that the charges had been dropped, for reasons independent of the rollover accident. Therein, she contended that Nelson "offers no competent evidence to support his 'factual background' about the criminal case against Mrs. Teaford," and that the D.A.'s letter "does not support Nelson's claims." Indeed, the claims that the D.A.'s letter and Nelson's other exhibits "amount to nothing more that [sic] self-serving hearsay and should therefore be disregarded." Respondent's numerous filings that allege fraud upon the court constitute violations of Rule 3.1, ORPR. Indeed, virtually every filing and each piece of correspondence sent by respondent or Poland, her father and attorney, were contrived to embarrass, delay or burden a third person, and were crafted for the sole purpose of obtaining an attorney's fee, in violation of Rule 4.4, ORPR, codified at 5

---

3. Rule 1.6, entitled Confidentiality of Information, provides:

   (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).

   (b) A lawyer may reveal, to the extent the lawyer reasonably believes necessary, information relating to representation of a client:

     (1) to disclose the intention of the client to commit a crime and the information necessary to prevent the crime;

     (2) to rectify the consequences of what the lawyer knows to be a client's criminal or fraudulent act in the commission of which the lawyer's services had been used, provid-ed that the lawyer has first made reasonable efforts to contact the client but has been unable to do so, or that the lawyer has contacted and called upon the client to rectify such criminal or fraudulent act but the client has refused or is unable to do so;

     (3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

     (4) or as otherwise permitted under these Rules.

   (c) A lawyer shall reveal such information when required by law or court order.

O.S.2001, Ch. 1, App. 3–A [4].

¶ 17 Judge Belot held a hearing on November 4, 2002, regarding respondent's contentions of "possible fraud" during which respondent, Nelson, Barrett and Poland testified. Respondent was represented by Geoffrey Jennings. Judge Belot stated on the record that there was:

"absolutely no evidence even introduced to suggest either that there has been a fraud on the Court or there was any fraud in connection with the underlying case, the Teaford against Bridgestone and others. Specifically, there's absolutely no evidence or even any inference or suggestion of any evidence that the accident in that case was either staged or had anything whatsoever to do with this criminal case."

Judge Belot also stated the following, on the record:

"If there was ever a case where excessive costs have been incurred because of irresponsible conduct by lawyers, this is it ... This is a truly disgusting matter ... There are some other things that I could say to you, Ms. Chappell, and you Mr. Poland, but its late and I might regret later what I have to say; but don't either of you ever show up in my court again. Don't ever ask to be admitted here pro hac vice."

Respondent's filings in this regard violated Rule 3.1, ORPR, codified at 5 O.S.2001, Ch. 1, App. 3–A.[5]

¶ 18 Judge Belot's November 13, 2002, "Order Denying Post–Settlement Motions" contains equally strong language. Two days later, Judge Belot filed a grievance with the OBA and provided a copy of the November 4, 2002, hearing transcript. Respondent continued her paper trail, filing a "Motion to Reconsider Court's Imposition of Sua Sponte Rule 11 Sanctions Against Cherie M. Chappell."

¶ 19 On December 4, 2002, respondent filed a response with the OBA to the grievance. Therein, she stated:

"I am terribly sorry that this matter came to your attention before I was afforded due process and an opportunity to present evidence as to why the matter should not be forwarded to your office. I hope to be able to resolve the matter with Judge Belot. I still do not know what I have done that has offended him. I will keep you informed."

¶ 20 Judge Belot denied the motion to reconsider Rule 11 sanctions on January 16, 2003. On February 18, 2003, respondent appealed to the U.S. Court of Appeals for the Tenth Circuit, stating in the Notice of Appeal:

"Cherie M. Chappell, former attorney for Plaintiff and lien claimant against Plaintiffs' attorney W. Dan Nelson, appeals to the United States District Court of Appeals for the Tenth Circuit from the Order of the District Court for the District of Kansas, entered in this case on January 16, 2003, denying Cherie Chappell's pro se Motion to the Court's referral of Chappell's conduct to the Oklahoma Bar Association without notice, or a show cause hearing, . . . ."

The record reveals that a ruling on this matter apparently is pending before the Tenth Circuit. Respondent filed her Brief in Chief with the Tenth Circuit on May 15, 2003.

¶ 21 Nelson filed a motion for sanctions against respondent and a hearing was held thereon, March 14, 2003. The record reveals that a ruling thereon apparently is pending.

**4.** Rule 4.4 Respect for Rights of Third Person
In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

**5.** Rule 3.1 Meritorious Claims and Contentions
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

¶ 22 Count I contains allegations that respondent's conduct violated Rules 1.6, 3.1, 4.4, 8.4(a) [6], 8.4(d), of the Oklahoma Rules of Professional Responsibility, and Rule 1.3, Rules Governing Disciplinary Procedure, and thereby constitutes grounds for professional discipline.

## STANDARD OF REVIEW

¶ 23 Our review of the evidence is *de novo*, in determining if the OBA proved its allegations of misconduct by clear and convincing evidence. RGDP Rule 6.12(c); *State ex rel. Oklahoma Bar Association v. Bolusky*, 2001 OK 26, 23 P.3d 268. Findings of Fact and conclusions of law of the PRT are advisory and neither binding nor persuasive. *Bolusky*, 2001 OK 26, ¶ 7, 23 P.3d at 272. We review the evidence *de novo* to determine if the allegations of misconduct are established by clear and convincing evidence. *State ex rel. Oklahoma Bar Association v. Thomas*, 1995 OK 145, ¶ 2, 911 P.2d 907, 909. The primary purpose of disciplinary proceedings is not punishment but purification of the Bar. *State ex rel. Oklahoma Bar Ass'n. v. Samara*, 1984 OK 32, ¶ 11, 683 P.2d 979, 983. We have reviewed the evidence and find that the PRT's findings of fact and conclusions of law are supported by the record and that the allegations of misconduct are established by clear and convincing evidence.

## ENHANCEMENT

¶ 24 We find that the enhancement considerations set forth by the PRT in its report have merit. The record is devoid of any evidence respondent expressed remorse for her conduct that harmed a former client. Indeed, the record contains evidence from which we conclude that respondent expressed no concern that her conduct was detrimental to the case in which she previously had represented the client. The record also is devoid of any evidence that respon-

dent suffers from depression or any other mental or physical disability that would have precipitated, caused or mitigated, her harmful conduct with respect to the matters that are the subject of the instant Rule 6 Bar Disciplinary Proceeding.

## DISCIPLINE

¶ 25 Upon a review of the record before us, including the September 18, 2003, transcript of the hearing before the PRT, the Report of the Trial Panel and the exhibits contained in the record, we find that respondent engaged in conduct that violates Rules 1.6, 3.1, 4.4, 8.4(a), 8.4(d), ORCP and Rule 1.3, RGDP. We accept the PRT's unanimous recommendation that respondent's license to practice law be suspended for one year. A one-year suspension was imposed in *State ex rel. Oklahoma Bar Association v. Rennie*, 1997 OK 108, 945 P.2d 494, wherein Rennie filed a false response to the bar complaint, misrepresented facts to a client about a summary judgment and told the client opposing counsel had "bought off" the judge. Rennie showed remorse and took action to ensure he would not make the same mistakes again. In the matter before us, respondent has shown no remorse, and has taken no action to ensure she will not make the same mistakes again. Indeed, she has filed an appeal with the Tenth Circuit, thereby perpetuating her previous errors.

¶ 26 Previously, we held an Oklahoma attorney accountable for the actions of that attorney's secretary in revealing a client's criminal charge to the client's mother. *See, State ex rel. Oklahoma Bar Ass'n. v. McGee*, 2002 OK 32, 48 P.3d 787. In finding that the attorney violated Rule 1.6, ORPC, we reiterated the fundamental principle that a lawyer maintain confidentiality of information relating to representation of a client. This not only includes matters communicated in confidence by the client, but also applies to all information that relates to the representa-

---

**6.** Rule 8.4 Misconduct, states in pertinent part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*
(d) engage in conduct that is prejudicial to the administration of justice;

tion, whatever its source may be. "A lawyer may not disclose such information unless the client consents after consultation." *McGee*, 2002 OK 32 ¶ 16, 48 P.3d 787, 790–791.

¶ 27 We hold that the PRT's recommendation of a one-year suspension and assessment of costs is reasonable and appropriate under the facts herein.[7] We hold that the OBA has proven the allegations in its complaint against respondent by clear and convincing evidence.

## CONCLUSION

¶ 28 Respondent's license to practice law is suspended for one year from the date this opinion becomes final. The OBA filed an application to assess the costs of this proceeding in the amount of $ 2,303.26 against respondent. The application is granted, and respondent is ordered to pay this amount within sixty days of the date this opinion becomes final.

CONCUR: WATT, C.J., OPALA, V.C.J., LAVENDER, HARGRAVE, KAUGER, BOUDREAU, EDMONDSON, JJ.

NOT PARTICIPATING: HODGES, J.

7. In some cases, discipline for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and in conduct prejudicial to the administration of justice, has resulted in disbarment. *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Hensley*, 1983 OK 32, 661 P.2d 527; *State ex rel. Oklahoma Bar Ass'n. v. Ablah*, 1959 OK 267, 348 P.2d 172.