961 P.2d 204 (1998)
1998 OK 56
STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
Charles Richard ROUSE, Respondent.
No. SCBD 4312.
Supreme Court of Oklahoma.
June 9, 1998.
Charles R. Rouse, Oklahoma City, Pro Se.
Dan Murdock, General Counsel, Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, For Complainant.
*205 ALMA WILSON, Justice:
¶ 1 The complainant, Oklahoma Bar Association, alleged one count of misconduct warranting discipline against the respondent attorney, Charles Richard Rouse. The Complaint alleged violations of Rules 1.7, 1.9(a), 1.16(a)(1), 8.4(d) and/or 4.3 of the Oklahoma Rules of Professional Conduct.[1] A Pretrial Order was prepared with stipulations attached, wherein the Bar Association alleged only a violation of Rule 1.7, and recommended that the respondent be publicly censured. After a hearing before the Professional Responsibility Tribunal, the trial panel found that the Bar Association did not prove a violation by clear and convincing evidence and unanimously recommended that the complaint against the respondent be dismissed. In its brief to this Court, the Bar Association continues to urge that the respondent receive a public reprimand. We find that the Bar Association has not proven by clear and convincing evidence that the respondent has violated a rule of the Oklahoma Rules of Professional Conduct, and we dismiss the complaint.
¶ 2 The Bar Association alleges that either the respondent agreed to represent two murder suspects whose interests were diverse, or that the second suspect reasonably believed that the respondent had agreed to represent him. The stipulated facts reveal that on May 30, 1996, B.G., was arrested on the charge of First Degree Murder. B.G.'s father was a deputy sheriff who knew the respondent and immediately retained him to represent his son. The respondent was denied access to B.G. at the police station, but while there learned that B.G. had confessed to involvement in a two-year old murder, and further learned that a co-defendant, M.R., was still at large. The deputy sheriff advised the respondent that he knew the co-defendant, and could probably locate him immediately. *206 The respondent requested that the deputy locate M.R., and see if he would talk to the respondent. The respondent then went to his office to await word from B.G., and called an associate of his firm to go to the Oklahoma City Jail to consult with B.G. The deputy and M.R. arrived at the respondent's office within two hours. The respondent and M.R. met for about one-half of an hour.
¶ 3 Testimony before the trial panel reveals that although the deputy was off duty, and was not wearing a uniform nor driving a patrol car, he requested that M.R. wear handcuffs, which M.R. agreed to do, placing them on himself. When they arrived at the respondent's office, the respondent asked about the handcuffs and they were removed. M.R. accompanied the respondent to his office, leaving the deputy sheriff and B.G.'s girlfriend in the reception area. The respondent testified that he advised M.R. that he could not represent him and M.R. reminded the respondent that the respondent had represented M.R. in a 1991 bankruptcy. A subsequent review of the respondent's records revealed that he had also represented M.R. in a 1992 charge of D.U.I. in the municipal court of Oklahoma City.
¶ 4 The respondent testified that after he advised M.R. that he was representing B.G., he asked M.R. for information because the only facts the respondent knew were that the charge against his client was murder, and that there was one victim and one co-defendant. M.R. described to the respondent some of the details surrounding the charge. The respondent testified that some of the details were exculpatory, and some inculpatory. M.R. told the respondent that he wished to surrender to the police because there was already a warrant out for his arrest because of a parole violation. The respondent testified that he advised M.R. to get his own attorney and warned that he would be best served by talking to his attorney before making any statements to the police. When M.R. related that he was indigent, respondent testified that he agreed to inform the public defender. At M.R.'s request, the respondent transported him to the jail where M.R. surrendered.
¶ 5 The respondent testified that between 8:45 and 9:00 one morning, he told Barry Albert, the head of the homicide division of the Public Defender's Office for Oklahoma County, that he had a murder case with two people, and that he could represent only one. The respondent asked if Albert would represent one. Albert explained that he did not go to the jail to interview potential clients. At some subsequent time, Patrick Ehlers, from the Public Defender's Office was appointed as M.R.'s lawyer. The respondent testified to the trial panel that during the preliminary hearing, Ehlers moved to disqualify the respondent as B.G.'s counsel. Ehlers claimed that an attorney/client relationship had attached between the respondent and M.R. A hearing was held. Barry Albert testified that the respondent told Albert that the respondent was representing two people in a Murder I case, and that he would have to withdraw from one of them because he had a conflict. Albert testified that there was nothing done by the respondent in representing M.R., and admitted that the only document the respondent prepared on M.R. appeared to be made during an interview, and did not appear to be a client intake memorandum that a lawyer would complete when interviewing a new client. Albert also admitted that Albert had a reputation as an aggressive defense attorney and that he would "give no quarter" in representing his client. After the hearing on the motion to disqualify the respondent from representing B.G., the trial judge ruled that there was a "monumental conflict" but he refused to find specific facts, or to elaborate. The respondent called the Bar Association to discuss the case with them shortly after the hearing, and Ehlers subsequently filed a bar complaint against the respondent.
¶ 6 Complainant's exhibits 1 and 2 are copies of arraignment minutes, both dated June 6, 1996. B.G.'s arraignment minute shows D. Rouse as his attorney. M.R., who was arraigned at the same time shows D. Rouse as attorney, which is then obliterated. When questioned on this during the hearing before the trial panel, the respondent testified that at the initial appearance the judge asked the respondent if he was representing *207 M.R., and the respondent replied that he was not.[2] The Bar Association and the respondent stipulated that if called, M.R. would testify that he believed the respondent represented him.
¶ 7 The judge who heard the disqualification motion specifically informed the Bar Association during the investigation that in connection with this disciplinary matter, he found no violation of the Oklahoma Rules of Professional Conduct during that extended hearing. The trial panel specifically mentioned the judge's conclusion during the disciplinary hearing when finding that there was not sufficient evidence to sustain the "clear and convincing" burden of proof of violation of the Oklahoma Rules of Professional Conduct. The trial panel again included the judge's statement to the Bar Association in its "Summary of Evidence and Findings of Fact."
¶ 8 The Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1-A, Rule 6.12(c) require that a charge against an attorney must be established by clear and convincing evidence. The Bar Association continues to urge that the respondent's conduct constituted a conflict of interest in violation of Rule 1.7 of the Oklahoma Rules of Professional Conduct. The Bar Association asserts that M.R. had a subjective reasonable belief that the respondent intended to serve as his attorney during the respondent's interview of M.R. at which time M.R. revealed facts concerning the murder case to the respondent. The Bar Association cites State of Oklahoma, ex rel. Oklahoma Bar Ass'n v. Green, 1997 OK 39, ¶ 19, 936 P.2d 947, 952, where this Court held that even though the attorney-client relationship rests on contract, the contract need not be express nor a retainer be requested or paid; the contract may be implied from the conduct of the parties. But even though the respondent admits that he had represented M.R. in the past, and that M.R. probably thought when he walked in the door that the respondent would represent him, if the respondent told him, as the respondent testified, that he could not represent M.R., and advised M.R. to seek other counsel, any subjective belief that M.R. was being represented by the respondent should have ended at that time. The Green case does not support the Bar Association's contention.
¶ 9 We need not address the other arguments of the Bar Association since all are based on establishing an attorney-client relationship, and all are distinguishable from the facts in this case. The law is clear and is not in controversy. Both Bar Association and respondent agree that the interests of B.G. and M.R. were adverse, and that the respondent could not represent both co-defendants. The respondent does not disagree that an attorney-client relationship can be established by a reasonable subjective belief of the client. This bar matter stands or falls on the belief of the credibility of the respondent, who testified that he told M.R. that he could not represent him. If believed, the respondent cannot be found to have violated Rule 1.7.
¶ 10 The trial panel concentrated its questions to the respondent and counsel for the Bar Association on certain issues. Counsel for the Bar Association even commented after the questions that he would have to be unobservant to fail to glean the inclination of the trial panel. M.R. has a strong motive for establishing an attorney-client relationship with the respondent. M.R. is facing the possibility of a death sentence since this would be his second murder conviction. But M.R. apparently did not contradict the respondent during M.R.'s arraignment when the respondent told the arraigning judge that *208 he did not represent M.R. This occurred only one week after the respondent is alleged to have taken M.R. as a client. There is no allegation of any client interviews during that week. An aggressive defense attorney has an equally strong motive for establishing an attorney-client relationship between the respondent and M.R. If the relationship does not exist, the respondent may be called to testify against M.R. Compare this to the respondent's motive of avoiding a public censure for failing to refute a subjective belief that he intended to represent M.R. and thereby becoming involved in a conflict of interest. In weighing motives, since the respondent, also a criminal defense attorney, testified that he specifically told M.R. on more than one occasion that he could not represent him, the Bar Association seems to imply that the respondent is willing to jeopardize the defense of a capital murder case of a former client simply to avoid a public censure. This is the same respondent who after the disqualification hearing reported the results of the hearing to the Bar Association. Enough evidence favorable to the respondent was presented to the trial panel for it to conclude that the Bar Association had failed to prove its case by clear and convincing evidence.
¶ 11 The trial panel implicitly revealed their concerns that this bar matter had its genesis in an attempt to prevent the respondent from revealing, or using on his client's behalf, facts given to the respondent during his interview with M.R. We do not favor the use of the attorney disciplinary process in attempts to affect the outcomes of either civil or criminal cases.
¶ 12 The Complaint is DISMISSED; the respondent is EXONERATED; and the application for assessment of costs is DENIED.
¶ 13 KAUGER, C.J., HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.
¶ 14 SUMMERS, V.C.J., disqualified.
NOTES
[1] Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3-A

Rule 1.7. Conflict Of Interest: General Rule
"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
"(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
"(2) each client consents after consultation.
"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
"(1) the lawyer reasonably believes the representation will not be adversely affected; and
"(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."
Rule 1.9. Conflict Of Interest: Former Client
"(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."
Rule 1.16. Declining Or Terminating Representation
"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
"(1) the representation will result in violation of the Rules of Professional Conduct or other law. . . ."
Rule 8.4 Misconduct
"It is professional misconduct for a lawyer to:
* * *
"(d) engage in conduct that is prejudicial to the administration of justice...."
Rule 4.3. Dealing With Unrepresented Person
"In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. A lawyer shall not give advice to such a person other than the advice to secure counsel, if the interests of such person are, or have a reasonable possibility of being, in conflict with the interests of the client."
[2] After the Complainant's Exhibit Numbers 1 and 2 were admitted into evidence without objection, the respondent testified as follows:

"Q When you appeared on behalf of your client
"A Yes, sir.
"Qat the arraignment one week after your visit with [M.R.] in your office, did the record reflect your appearance on behalf of your client?
"A [B.G.], yes, sir. Judge entered that on the minute. Denied my request for bond.
"Q And, sir, was there any record of anyone appearing on behalf of [M.R.]?
"A No, sir. As I was leaving, [M.R.] was being arraigned by the judge. And judge asked, you don't represent him. I said no. He crossed my name off the minute. That's why you see the cross-out in number 1."
This testimony is not contradicted.