1998 OK 132

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**George W. BUTNER, Respondent.**

**No. SCBD 4317.**

Supreme Court of Oklahoma.

Dec. 22, 1998.

Allen J. Welch, Ass't. General Counsel, Oklahoma Bar Association, for complainant.

Catherine Holland Peterson, Salliann Parker Walker, Petersen Associates, Inc., Norman, Oklahoma, for respondent.

SIMMS, J.

¶1 Complainant, Oklahoma Bar Association, brought disciplinary proceedings against Respondent, George William Butner, Claiming Butner violated Rules 1.1, 1.3, 4.2, 8.4(c), and 8.4(d) of the Oklahoma Rules of Professional Conduct. After a hearing before a Trial Panel of the Professional Responsibility Tribunal, the Trial Panel concluded that Butner had not violated the Oklahoma Rules of Professional Conduct and recommended that the complaint against him be dismissed.

¶2 Events precipitating this complaint began in 1980 when Lee Stillwell, a member of the Oklahoma Bar Association, failed to file a divorce action after being employed to do so. Butner entered the situation in 1996 when Stillwell asked Butner to speak to the ex-wife of his former client in an effort to facilitate the divorce which should have occurred over 16 years before.

¶3 The bar complaint alleged Butner violated the following Rules Governing Disciplinary Procedure: 1.1 (competence), 1.3 (diligence), 4.2 (communication with person represented by counsel), 8.4(c) (conduct involving fraud, dishonesty or deceit), and 8.4(d) (conduct prejudicial to the administration of justice). At the hearing, the Bar Association dismissed its claims for violations of Rules 1.1, 1.3 and 8.4(c), leaving the only issues remaining the alleged violations of Rules 4.2 and 8.4(d). After de novo review, we agree with the Trial Panel and find the Bar Association was unable to meet its burden in establishing that George Butner violated Rules 4.2 and 8.4(d).

## FACTS

¶4 In 1980, Mr. & Mrs. Clayton were getting a divorce. Mr. Clayton hired Lee Stillwell, who is now an associate district judge, to represent him in the divorce. Mrs. Clayton had accompanied Mr. Clayton to his appointment with Stillwell to sign the waiver of divorce. She had paid $230.00 to Stillwell, on Mr. Clayton's behalf because he was unable to pay the fee and neither Mr. nor Mrs. Clayton wanted the matter delayed due to non-payment. Lee Stillwell did not represent Mrs. Clayton.

¶5 In 1996, Mrs. Clayton, now Smith, needed documentation of her divorce for routine paperwork in conjunction with a missionary trip she was planning with her now husband, who is a minister. She discovered there was no record of her divorce in Hughes County, where she understood her divorce to have been granted, or in neighboring Seminole County. Very concerned and upset, she contacted Stillwell in an effort to discover what the problem was. Neither the petition for divorce nor the waiver had been filed because Stillwell's file was then packed away when Stillwell left private practice to join the district attorney's office.

¶6 After being contacted by Mrs. Smith, Stillwell asked George Butner if he would be willing to speak with Smith and try to help her with the divorce problem. After coming to Seminole County to speak with Stillwell, Smith then went across the street to see Butner, Stillwell having suggested Butner might be able to help her.

¶7 The thrust of the bar's allegations concerning Rule 4.2 center around the theory that Butner represented the interests of Stillwell, as opposed to the interests of Mrs. Smith. In Butner's unopposed testimony, he stated that he did not discuss with Stillwell his advice to Mrs. Smith, venue options for Mrs. Smith, or use of the original 1980 petition to facilitate a quicker divorce for Smith.

¶8 There is no evidence of improper communications between Stillwell and Butner; nothing to indicate the advice he gave Smith was influenced by Stillwell or some concern for Stillwell; and no substantive evidence that Butner was attempting to hide matters to save Stillwell embarrassment. There is nothing in the record to indicate Butner was representing the interests of Stillwell, especially as against the interests of Mrs. Smith.

¶ 9  Smith did not retain Butner as her attorney and at the conclusion of their only meeting, she mentioned that she was going to retain a Stillwater attorney instead, William Boyce.  Boyce had previously helped Smith confirm the unfiled divorce by checking Hughes and Seminole County records.

¶ 10  Butner accepted no money from Smith, but did act as courier for the reimbursement of $230, the 1980 fee, between Stillwell and Smith.  He did so at Boyce's request.  Butner also conveyed Stillwell's apologies when he gave Boyce the reimbursement.

¶ 11  Butner spoke to Boyce on the phone about possible options of waiving venue and using the 1980 petition to possibly avoid the notice requirements and get the divorce done faster, essentially repeating the discussions he had with Smith.  It was during the course of this conversation that Butner made a comment in reference to the "godly powers" of now Judge Stillwell, which was interpreted by Boyce as a reference that Stillwell might try to do something improper to help Smith out and handle the matter with secrecy, since the original error had been his.  The bar and Respondent both agreed the statement was "inappropriate, flippant and [a] frustrated use of terminology," but did not find Butner intended anything improper.  Smith's divorce wasn't even sought in Seminole County where Stillwell sits and the original 1980 petition and waiver were to have been filed in Hughes County.

¶ 12  Butner stated that at no time did he represent Smith.  At the same time, there was nothing showing he operated contrary to her interests.

## DISCUSSION

¶ 13  The Bar Association's asserted violation of Rule 4.2 was premised on a theory that Butner represented Stillwell to the adversity of Mrs. Smith.  There was an ancillary argument as well in which the bar contended that Butner should not have spoken to Smith, knowing she was represented by Boyce in Stillwater.  The trial panel correctly concluded there was no evidence to show Butner represented Stillwell in any capacity.

Stillwell simply suggested to Smith that she see Butner for her own benefit and she did so.  Butner "simply discussed the alternatives with Mrs. Smith and then with her attorney."  The Trial Panel also noted the problems with the bar's argument that Butner could not speak to Smith because she had already sought the advice of Boyce.  The panel did not want to curb a client's ability to seek a second opinion and noted that Butner was not told Boyce had been retained, only that Smith had seen him previously.

¶ 14  Butner discussed with Smith the possibility of getting her divorced finalized in 72 hours, as speed and no publicity were priorities for Mrs. Smith, now a minister's wife with two children.  Neither party was able to find legal authority for or against the proposition that a 1980 petition could be filed sixteen years after being signed, possibly avoiding notice requirements to the first husband, Mr. Clayton.  The evidence does not support the contention that Butner suggested anything dishonest or was more concerned with Judge Stillwell than with Smith.  He was simply brainstorming methods by which Smith's divorce could be done as quickly and painlessly as possible.

¶ 15  With regard to Boyce, the panel specifically asked Butner if he knew Boyce had been retained when Smith came to his office.  He said he was aware she had spoken with another attorney, but was not aware Boyce was her attorney until she said so at the end of the conversation.  Even then, it was not clear if Boyce was retained or was simply going to be upon Smith's return to Stillwater.  The panel chairman noted that the existence of an attorney-client relationship between Boyce and Smith was not material to Butner, the only question for Butner's concern was whether he knew or should have known the relationship existed.  Given the extent of the information Butner had from Judge Stillwell and Smith, it is not apparent that Butner would have known Boyce was Smith's attorney; he only discovered the extent of Boyce's role in the course of his meeting with Smith.  Also, it should be pointed out that Smith came to Butner, albeit at the suggestion of Stillwell, and Butner was under the reasonable belief that Smith was

either shopping for an attorney or at least seeking a second opinion, neither of which would have required Butner to call Boyce in order to speak with Smith.

¶ 16 The bar association conceded that its alleged violations of 4.2 and 8.4(d) would stand or fall together. The 4.2 violation was the basis for the 8.4(d) violation. Having found no evidence to support the contention that Butner represented Stillwell's interests in opposition to Smith's or that Butner had improper contact with another attorney's client, no violation of 8.4(d) exists.

¶ 17 At the conclusion of the hearing the bar association requested that Respondent be privately reprimanded and pay the costs associated with the complaint.

■ ¶ 18 The bar association must establish by clear and convincing evidence the charges against a respondent before discipline may be imposed upon an attorney. *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 1991 OK 33, 810 P.2d 826. Having failed to do so, the Complainant's request for a private reprimand is denied and in accordance with the Trial Panel's decision, the Respondent is Exonerated.

¶ 19 RESPONDENT EXONERATED. APPLICATION FOR ASSESSMENT OF COSTS DENIED.

KAUGER, C.J., SUMMERS, V.C.J., HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA, and WATT, JJ., concur.

ALMA WILSON, J., disqualified.