2003 OK 21

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**R. Scott SCROGGS, Respondent.**

Nos. O.B.A.D. 1485, S.C.B.D. 4602.

Supreme Court of Oklahoma.

March 4, 2003.

Rehearing Dismissed June 9, 2003.

Alan J. Welch, Oklahoma Bar Association, Oklahoma City, for Complainant.

Joseph R. Farris, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma City, for Respondent.

SUMMERS, J.

¶ 1 The allegations against Respondent relate to four lawyer-client relationships involving Alvin Hall and his wife, Virginia Barnes, Reida Blair, and Mr. and Mrs. Worsham. The Trial Panel concluded that Respondent violated certain rules of professional conduct and recommended a suspension for one year. The Bar Association (Bar) seeks to have Respondent suspended for two years and a day or disbarred.

¶ 2 We exercise an exclusive, original, and nondelegable jurisdiction to regulate the practice of law, and in our *de novo* review of the trial panel's record the conclusions and recommendations of that panel are neither binding nor persuasive. *State ex rel. Oklahoma Bar Association v. Schraeder*, 2002 OK 51, ¶ 5, 51 P.3d 570, 573–574. We now review the evidence presented before the Trial Panel, and apply the applicable rule of professional conduct.

I.

¶ 3 Alvin Hall filed a discrimination complaint with the Oklahoma Human Rights Commission. In January 1998 Hall hired Respondent, and paid him $800, including $150.00 for court costs. The $800 was deposited into Respondent's operating account.

¶ 4 The Commission told Hall to provide a letter of representation from his lawyer. Due to Mr. Hall's health his wife communicated with Respondent, and she recorded those conversations. Respondent said that he would represent Hall before the Commission and send it a letter of representation. He did not do this. Respondent said that he would draft a Petition to be filed and mail a copy to Hall. He did not do this either.

¶ 5 Respondent advised that a right-to-sue letter was needed to file suit, and then later that such a letter was not needed. Respondent advised Hall that 180 days must lapse between filing of a Commission complaint and filing a suit in court. In April 1998 Respondent advised Hall that they could proceed. On April 24, 1998, Hall telephoned Respondent's receptionist and stated that he was terminating the lawyer-client relationship, and that he wanted a refund of all monies he had paid. Hall hired a different lawyer who filed the action. The case was subsequently dismissed, and there is nothing in the record to suggest that the dismissal was due to some act of Respondent. Hall filed a complaint with the Tulsa County Bar Association, Respondent was made aware of this complaint and refunded $150 to Hall on April 6, 1999.

¶ 6 Respondent testified that he prepared a petition for filing in the Hall case. However, it was not filed because he was waiting for a 180–day period to expire prior to filing. He testified that his view of when to file the action did not change, but that the words he used when talking to the Halls could have been misunderstood. He was terminated as Hall's lawyer prior to the expiration of the 180–day period.

¶ 7 Respondent further testified that Hall informed his office staff of the termination when he was out of the country, and he was not told of a requested refund at that time. He testified that he heard of Hall's request for a refund after Hall filed a complaint with the Tulsa County Bar Association. Respondent testified that he refunded $150, the amount advanced for filing fees, approximately one year after Hall terminated the lawyer client relationship.

¶ 8 The filing fees were placed in Respondent's operating account instead of a trust account. Respondent admitted that this conduct violated Rule 1.15(b), (c) of Oklahoma's Rules of Professional Conduct.[1]

¶ 9 Respondent commingled the filing fees with his own funds and thus violated Rule 1.15(a). See the explanation of commingling in *State ex rel. Oklahoma Bar Association v. Giger*, 2001 OK 96, n. 37, 37 P.3d 856, 865. Rule 1.15(b) requires a lawyer to promptly account and refund the client's property when the lawyer client relationship is terminated. *State ex rel. Oklahoma Bar Association v. Wilkins*, 1995 OK 59, 898 P.2d

1. 5 O.S.2001 Ch. 1, App. 3–A, Rule 1.15(a), (b), & (c) provides:

Rule 1.15. Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

147, 151. Although Respondent and his secretary denied that they knew that a refund had been requested prior to the Tulsa County grievance, Respondent knew that he had collected an advance on filing fees, that no action had been filed, and that no action would be filed by him on account of the termination of the lawyer-client relationship. Respondent did not account for the funds when he became no longer the Halls' lawyer, and he thus violated Rule 1.15(b). Rule 1.15(c) requires an attorney to keep separate a client's or third person's funds in which the lawyer also has an interest until a proper accounting and severance of interests can be made, or until any dispute over the quantum of interests in resolved. *State ex rel. Oklahoma Bar Association v. Parsons*, 2002 OK 72, ¶ 11, 57 P.3d 865, 868. Respondent did not keep the funds separate, and thus violated Rule 1.15(c).

¶ 10 The Trial Panel determined that Respondent made "misrepresentations" to the Halls and thus violated Rule 8.4(c).[2] The Bar points to Respondent's statements to the Halls that 180 days must elapse between filing with the E.E.O.C./Human Rights Commission and filing suit, and then later telling the Halls that they could proceed without a right-to-sue letter, and then subsequently stating that he was waiting for the 180-day period to end to file suit. One witness called by the Bar was a lawyer who testified concerning right-to-sue letters. He stated that at the time of Respondent's representation of the Halls several courts of different jurisdictions were not consistent on the issue of when a right-to-sue letter was necessary prior to filing suit.

¶ 11 In Rule 8.4 cases we have examined the evidence for an improper motive for the misrepresentation. "A misrepresentation must be shown by clear and convincing evidence that the declarant had an underlying motive (i.e., bad or evil intent) for making the statement." *State ex rel. Oklahoma Bar Association v. Johnston*, 1993 OK 91, ¶ 16, 863 P.2d 1136, 1143. We have looked at whether a lawyer was attempting to gain some advantage by a misrepresentation. *State ex rel. Oklahoma Bar Association v. Berry*, 1998 OK 73, ¶ 14, 969 P.2d 975, 980; *Matter of McConnel*, 1994 OK 107, 886 P.2d 471, 474–475. A lawyer's incorrect opinion on a question of law is not, by itself, a misrepresentation that violates Rule 8.4(c).

¶ 12 These statements of Respondent are not in the nature of misrepresentation, but of Respondent's understanding of a specific area of the law. They relate to the date Respondent would commence the action in relation to his understanding of a rule of law, and the evidence shows that he was ready to file suit when the 180-day period expired, as he understood that rule. These representations are thus not violations of Rule 8.4(c).

¶ 13 Hall said he would send a letter of representation to the Commission. He did not. He knew that he had told the Halls that he would send them a petition. The evidence is not clear and convincing that Respondent's statements were for the purpose of causing the Halls, or others, to act or refrain from acting in some manner that would either benefit Respondent or fulfill some other improper motive. The evidence is insufficient to show a Rule 8.4(c) misrepresentation.

¶ 14 Mrs. Hall testified of difficulty in contacting Respondent by telephone. Respondent testified that after the Halls brought their grievance a new office policy was instituted as a goal for timely responses to telephone calls from clients. The Rules of Professional Conduct require a lawyer to keep a client reasonably informed about the status of a matter, and promptly comply with reasonable requests for information. Rule 1.4(a).[3] The record shows Respondent's failure to keep the Halls reasonably informed about the status of the matters they hired him to perform, and Respondent thus violated Rule 1.4(a).

---

**2.** 5 O.S.2001 Ch. 1, App. 3–A, Rule 8.4(c) states in relevant part:

Rule 8.4. Misconduct
It is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation...."

**3.** 5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 1.4:

Rule 1.4. Communication
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

¶ 15 The Trial Panel concluded that Respondent's conduct also violated Rule 1.1, requiring competent representation by a lawyer, and Rule 1.3, requiring a lawyer to act with reasonable diligence and promptness.[4] Respondent argues that his representation was competent because he was ready to file the action after the 180–day period.

¶ 16 Respondent did not perform his obligation to appear before the Commission, even if solely by letter, and monitor the administrative process. This evidence is sufficient to show that Respondent failed to act with reasonable diligence, promptness, and competence. Respondent thus violated Rules 1.1 and Rule 1.3.

¶ 17 The Bar's evidence is insufficient to show that Respondent acted either incompetently or without reasonable diligence as to filing the action in court. The Bar's position appears to be that Respondent could have filed the action before the 180–day period expired, and because he could have and did not, he acted incompetently. The evidence shows that the action was subsequently filed by a different lawyer.

¶ 18 Respondent articulated a reason for not filing Hall's petition: expiration of the 180–day period. According to the calculation made by the Bar, this period expired on May 5, 1998. Was this delay unreasonable? Respondent's conversations with the Halls were not a model of clarity in explaining the 180–day period, but in April 1998 he stated that he was ready to begin the action.

¶ 19 The Bar argues that delay in filing Hall's lawsuit was not related to the 180–day period, because Respondent stated on April 16, 1998, that that he was ready to file, and this conversation occurred prior to May 5, 1998. But the Bar has not met its burden of showing by clear and convincing evidence that Respondent's timing in not filing the suit was anything more than Respondent's application of a 180–day rule. The Bar has not shown that Respondent's reliance upon a 180–day rule for Hall's legal action was ethically lacking.

¶ 20 The Trial Panel concluded that Respondent's conduct violated Rules 8.1(a) and 8.4(c) [5] because he sent a letter to the Office of the General Counsel of the Bar and stated therein that "Mr. Hall never requested a refund of his monies when he terminated my relationship with him." His letter includes an affidavit from his office manager stating that, to the best of her knowledge, Hall had never requested a refund. Respondent's position was that Hall did not request a return of funds until approximately February 1999. The transcript of Hall's conversation with the unidentified person answering the phone at Respondent's firm in April 1998 shows that Hall wanted a refund. The subsequent complaint Hall filed with the Tulsa County Bar states that he requested, but did not receive, a refund. Respondent testified that one person, other than the office manager, could have been answering the telephones and received the message from Hall that he wanted a refund.

¶ 21 A lawyer is duty-bound to supervise the work done by lay personnel and stands ultimately responsible for work done by all nonlawyer staff. *State ex rel. Oklahoma Bar Association v. McGee,* 2002 OK 32, ¶ 16, 48 P.3d 787, 791–792; *State ex rel. Oklahoma Bar Association v. Mayes,* 1999 OK 9, ¶ 25, 977 P.2d 1073, 1082.

¶ 22 Whatever is notice enough to excite attention and put the party on guard and call for inquiry, is notice of everything to which such inquiry might have led. *Hatfield*

---

**4.** 5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 1.1:

Rule 1.1. Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 1.3:

Rule 1.3. Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

**5.** 5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 8.1(a):

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or

For Rule 8.4(c) see note 2 *supra.*

*v. Lotty,* 1915 OK 456, 149 P. 1171, 1173, *quoting, Wood v. Carpenter,* 101 U.S. 135, 141, 25 L.Ed. 807 (1879).[6] Respondent had actual notice of the circumstance of a client terminating the lawyer-client relationship and requesting the return of his documents. Respondent knew of his collection of filing fees prior to filing suit. We conclude that such is sufficient to put a prudent lawyer upon inquiry as to the fact of whether the lawyer was retaining that client's property and whether the client had requested a refund. Respondent did not make any determination as to whether he was retaining Hall's property until after Hall filed a grievance.

¶ 23 Dr. Merrill has stated that "It is a commonly employed phrase that a principal is bound by notice to or the knowledge of his agent in respect to the matters within the agent's authority." 3 *Merrill on Notice,* § 1203A (1952). Further, that knowledge of an agent is a source of notice to the agent's principal if the matter is "in the scope of the agency," and "connected with it," and "falls within the category of facts which the agent owes a duty to communicate." *Id.* at § 1223. The person answering the phone at Respondent's office was asked if he or she could take a message for Respondent, and then after Hall requested a refund he was told that Respondent would be given the message. Respondent may not provide a method for his clients to communicate to him and then claim ignorance of client communications utilizing his method. *Cf. Oklahoma Bar Association v. Bedford,* 1997 OK 83, ¶ 11, 956 P.2d 148, (in lawyer discipline proceeding we stated that the lawyer had imputed knowledge of lien arising from receptionist's act of receiving a copy and notice of the lien). Respondent offered no receptionist log, intra-office memo, or a letter to client upon closing the file as evidence to contradict the transcript of the phone conversation. The evidence is sufficient to show that Respondent had at least constructive knowledge

that Hall had requested a refund, and that Respondent communicated the opposite to the Bar. We conclude that Respondent violated Rules 8.1(a) and 8.4(c).

## II.

¶ 24 Virginia Barnes retained respondent and paid him $725. She signed a Petition on February 21, 1999 in Respondent's office. She understood that Respondent would file the Petition a few days later. The petition was filed on July 15, 1999. In December of 1999 Respondent agreed to a motion to dismiss, without prejudice, on the ground that Barnes had not exhausted her administrative remedies. The Equal Employment Opportunity Commission (E.E.O.C.) issued a right-to-sue letter on February 28, 2000, and Respondent filed a second action on her behalf on May 30, 2000.

¶ 25 Respondent assisted Barnes in filing with the E.E.O.C. and he prepared a draft petition for Barnes to sign. When Barnes first came into his office he gave her the E.E.O.C. form, and it was sent to the E.E.O.C. shortly thereafter. He did not file the petition until July 1999 because he was waiting for a 180-day period to expire. He agreed with opposing counsel to dismiss the first suit because the E.E.O.C. had not yet issued a right-to-sue letter.

¶ 26 On February 7, 2001 Barnes sent, by certified mail, a letter to Respondent terminating the lawyer-client relationship. She filed her grievance with the Bar in February 2001. The first petition, although filed a few months after it was prepared by Respondent and Barnes, was dismissed because it was premature. We decline to impose an ethical rule that a lawyer must file a petition prematurely in order to avoid a charge of dilatory conduct. The evidence shows that Respondent filed Barnes' legal action after the right-to-sue letter was issued. Respondent's evidence is that the second legal action was

---

**6.** The common law rule is codified in our statutes at 25 O.S.2001 § 13:

§ 13. Circumstances putting one on inquiry deemed constructive notice

Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

timely filed and remained pending at the time of the trial panel hearing herein.

¶ 27 The Bar alleges that Respondent failed to expedite the litigation in a manner consistent with Barnes' interests and thereby violated Rules 1.1, 1.3, and 3.2.[7] The Bar has pointed to no act that would have expedited the issuance of the right-to-sue letter, but Respondent did not accomplish service of process in the second action.

¶ 28 The second action was filed May 30, 2000. Summons was issued but Respondent made no effort to serve the defendant at that time. Barnes terminated the lawyer-client relationship in February 2001, and when he withdrew from the case in December 2001 service had not been accomplished. Barnes also testified of numerous unsuccessful attempts of trying to contact Respondent by telephone.

¶ 29 We have stated that a lawyer's failure to obtain service in a matter within the required time that results in dismissal and subsequent bar to a client's claim is a violation of Rules 1.1, 1.3, and 3.2 of the Rules of professional Conduct. *State ex rel. Oklahoma Bar Association v. Prather*, 1996 OK 87, 925 P.2d 28, 29. We have also stated that a lawyer's neglect of a legal matter is not excused by the fact that a client may ultimately prevail on his or her claim with subsequent counsel. *State ex rel. Oklahoma Bar Association v. Bolusky*, 2001 OK 26, ¶ 4, 23 P.3d 268, 272. A lawyer must provide "competent representation" (Rule 1.1) act with reasonable diligence and promptness (Rule 1.3) and make "reasonable efforts" to expedite litigation (Rule 3.2). Respondent obtained service upon the defendant, a local employer, in the first action, but failed to attempt service of process upon that same defendant for the nine months between the time the petition was filed and the date his client severed the lawyer-client relationship. Failing to attempt service for this nine-month period is not competent representa-

tion, nor reasonable diligence, nor a reasonable effort to expedite the litigation. We agree with the trial panel that Respondent violated Rules 1.1, 1.3, and 3.2.

¶ 30 Upon being told of his discharge as Barnes' lawyer Respondent told her that he would file a motion to withdraw "and the next thing I knew six months had passed" without filing the motion. Respondent testified that this was due to inadvertence. A lawyer is required by Rule 1.16(a)(5) [8] of the Rules of Professional Conduct to withdraw from a legal matter upon being discharged. *State ex rel. Oklahoma Bar Association v. Minter*, 2001 OK 69, ¶ 21, 37 P.3d 763, 773. Respondent violated Rule 1.16(a)(5).

## III.

¶ 31 Reida Blair retained Respondent in December 1999. Respondent was provided with a right-to-sue letter from the E.E.O.C. in February 2000, and that letter contained the name and address of the contact person for Blair's former employer, a corporation maintaining its headquarters in Texas. She signed the Petition on March 1, 2000, and it was filed April 14, 2000.

¶ 32 Respondent attempted service on the defendant, but served the registered service agent for a corporation with a name similar to, but not identical with, the defendant. Respondent obtained the name of the service agent by a telephone call to the office of the Oklahoma Secretary of State. Respondent did not check to see if the defendant timely answered or made an appearance in the matter after his attempt at service. Respondent sent a copy of the petition to the defendant/corporation's headquarters in Texas.

¶ 33 In October 2000 Blair telephoned Respondent and wanted an explanation on the status of the case. Respondent informed her that service had been accomplished and that the defendant did not have a deadline to

---

7. See note 4 *supra*, for Rules 1.1 and 1.3. 5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 3.2 states:
Rule 3.2. Expediting Litigation
   A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

8. 5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 1.16(a)(5) states:
   "... [A] lawyer ... shall withdraw from the representation of a client if: ... (5) the lawyer is discharged."

meet. Respondent told her that he had corresponded with the defendant, and that everything was going well. She requested copies of the correspondence, but they were not provided.

¶ 34 In January 2001 Blair checked on the status of her case with the court clerk, and discovered that the defendant had not been served. On January 22, 2001, she sent a letter to Respondent outlining her frustration at not receiving copies of documents related to the case, and that he had ten days to provide her with a written response if he intended to proceed with her case. She also requested a refund if he was not going to proceed.

¶ 35 On January 29, 2001, she wrote a letter to the judge assigned to her case and asked that the judge not dismiss her case. The letter to the judge states that she requested documents from her lawyer, the respondent, but that he had declined to provide her with them. She further requested time to try to obtain new counsel. On February 16, 2001 she sent a letter to Respondent terminating the lawyer-client relationship and requested that her file be sent to her new lawyer.

¶ 36 Blair's new lawyer obtained the file from Respondent, contacted the Texas Secretary of State and identified the service agent, served the defendant, and the matter is proceeding. Respondent did not withdraw from the case until December 2001.

¶ 37 The trial panel concluded that Respondent violated Rules 1.1, 1.3, and 3.2. Respondent points to the similarity in the names of the defendant and the company that he served. We are not called upon to decide whether an isolated mistake in service may amount to lawyer misconduct. The name of the contact person for employer appears on the face of the right-to-sue letter from the E.E.O.C., and this was provided to Respondent prior to the date the petition was filed. Respondent did nothing to determine if his attempt at service had been successful until several months later when he received a complaint from his client. We agree with the trial panel that such conduct amounts to a failure of Respondent to provide "competent representation" (Rule 1.1) or act with reasonable diligence and promptness (Rule 1.3) or make "reasonable efforts" to expedite litigation (Rule 3.2).

¶ 38 The trial panel also determined that Respondent failed to keep Blair reasonably informed of the status of her case. Blair kept her telephone bills showing when she contacted Respondent's office. She stated that she called Respondent several times to discover why she was not receiving copies of documents that Respondent had stated that he would send to her. We agree that Respondent failed to keep Blair reasonably informed about the status of her case, and thus violated Rule 1.4(a).

¶ 39 The trial panel also concluded that Respondent misrepresented to Blair the status of her case and thereby violated Rule 8.4(c). What statements of Respondent show conduct involving dishonesty, fraud, deceit or misrepresentation? The Bar states that Respondent told Blair on March 1, 2000 that her petition would be filed immediately and it was not filed until April 14, 2000. Respondent did not work on Blair's case between March 1, and April 14th, and he sent no contemporaneous letter to her explaining that the petition would be filed a date later than "immediately" after March 1st. The Bar also points to Respondent's statements to Blair that he had served and contacted the defendant. Respondent states that his comment on contacting the defendant is merely a misunderstanding on the part of Blair, that he thought that he had contacted the defendant by serving it with process, and that he did send a copy of the petition to the actual defendant.

¶ 40 A lawyer's act in misrepresenting the status of a case is a violation of Rule 8.4. *State ex rel. Oklahoma Bar Association v. Kessler*, 1995 OK 32, 895 P.2d 713, 718. We have explained that Rule 8.4(c) is violated when a lawyer makes false assurances to the client about the progress of a case when, in fact, the case is stalled due to the lawyer's inattention. *State ex rel. Oklahoma Bar Association v. Bolusky*, 2001 OK 26, ¶ 9, 23 P.3d 268, 273. The evidence is sufficient to show that Respondent did not file the peti-

tion as represented to his client. Blair's testimony was that she called many times trying to get copies of documents relating to the contacts Respondent had with her former employer as she understood had happened from her conversations with Respondent. She testified that Respondent told her that he had corresponded twice with her former employer and "everything was going fine with my case."

¶41 Respondent's statements related to facts about the status of Blair's case. If his statements of contact with her former employer related solely to service of process and mailing a copy of the petition, as Respondent alleges, he could have explained this to her upon her first request for copies of the correspondence. He did not do this and he stated that he would provide copies to Blair. Blair already had a copy of the petition from when she visited his office after the petition was filed. His statements thus appear to be a lawyer's false assurances to a client that the client's matter is proceeding normally, when in fact it is not, because of lawyer neglect. The advantage to a lawyer in making such statements is to dissuade the client from seeking new counsel, as some of Respondent's former clients have done. We conclude that the evidence is sufficient to show that Respondent misrepresented to his client that he had corresponded with her former employer. Respondent violated Rule 8.4(c).

■ ¶42 A lawyer is required by Rule 1.16(a)(5) [9] of the Rules of Professional Conduct to withdraw from a legal matter upon being discharged. *State ex rel. Oklahoma Bar Association v. Minter*, 2001 OK 69, ¶21, 37 P.3d 763, 773. In addition to the findings of the trial panel we conclude that Respondent violated Rule 1.16(a)(5) by not withdrawing from Blair's lawsuit until approximately ten months after Respondent was discharged as her lawyer.

## IV.

¶43 Mr. Worsham thought that he was being harassed at work, and on January 29, 1998, retained Respondent. Worsham's employer learned that he had retained counsel and required him to see a psychiatrist as part of an employee assistance program. Worsham was placed on leave of absence with pay.

¶44 Respondent prepared a petition for filing, and Mr. Worsham verified the petition on March 17, 1998. Respondent testified that during the process of moving into a new office he prepared the Worsham petition for a law clerk in his office to file. The law clerk, now a lawyer, testified that she never received the petition or directions to file it. Respondent testified that the law clerk may not have received the petition because of the move.

¶45 In May of 1998 Mr. Worsham committed suicide. Mrs. Worsham and Respondent discussed filing a new petition with Mrs. Worsham as a plaintiff. Respondent told Mrs. Worsham that the new petition had been filed, when in fact, it had not. Respondent testified that a law clerk, (a different clerk from the one in March) failed to file the petition. Respondent testified that he did not consider the fact that for the law clerks to file the petitions they would have been required to obtain from him checks or cash for payment of the filing fees, and that no record of them doing so exists. Mrs. Worsham stated that her discussions with Respondent she sensed a negative attitude from Respondent about the lawsuit, and she contacted another lawyer. In September 1998 Respondent wrote a letter to Mrs. Worsham's new counsel, and explained his discovery that the Petition had not been filed and that he had no pleadings to forward to him. Thereafter Mrs. Worsham's new counsel brought actions against Respondent and Mr. Worsham's former employer. Both actions are still being litigated. Mrs. Worsham testified at the Trial Panel hearing that at the time of the suicide she and her husband thought that an action had been filed against Worsham's employer. She testified that Re-

9. 5 O.S.2001 Ch. 1, App. 3–A, R.P.C. Rule 1.16(a)(5) states:

"... [A] lawyer ... shall withdraw from the representation of a client if: ... (5) the lawyer is discharged."

spondent did not return all of her telephone calls to him.

¶ 46 The Worshams wanted Respondent to contact Mr. Worsham's employer and stop alleged harassment to Mr. Worsham occurring during his employment. Respondent told the Worshams that he would contact Mr. Worsham's employer, its Human Resources Department, and the employer's lawyers. Respondent testified that he telephoned Worsham's employer and "talked to a female" in Human Resources and "I just left a message." Mr. Worsham's former employer has no record of a contact by Respondent. The evidence also shows that Respondent did not return telephone calls made to him by Mrs. Worsham.

¶ 47 A lawyer must supervise the work done by lay personnel, and the lawyer is responsible for work done by that personnel. *State ex rel. Oklahoma Bar Association v. McGee, supra; State ex rel. Oklahoma Bar Association v. Mayes, supra.* Respondent told the Worshams that the action had been filed and defendant served when, in fact, the action had not been filed and defendant not served. Respondent later told Mrs. Worsham that a new petition had been filed, when in fact, it had not.

¶ 48 Respondent was retained, in part, to make certain communications to Mr. Worsham's employer. Respondent's acts in failing to competently communicate with Mr. Worsham's employer and failing to determine if the petitions had been filed show a violation of Rule 1.1 (failure to provide competent representation) and Rule 1.3 (failure to act with reasonable diligence and promptness). Respondent's conduct in misrepresenting the status of his clients' matter and that the petitions had been filed are violations of Rules 1.4(a), (failure to keep a client reasonably informed) and Rule 8.4(c), (misrepresentation to gain an advantage).

¶ 49 The Bar also sought to impose discipline based upon an allegation that Respondent removed a page from Mr. Worsham's journal prior to returning it to Mrs. Worsham. Respondent had the journal to review for using it in the litigation against Mr. Worsham's former employer. He returned the journal to Mrs. Worsham prior to her filing a grievance against Respondent.

¶ 50 Mr. Worsham kept a journal of his thoughts. The journal was an unbound collection of different types of paper. The journal contained both handwritten notes and drawings. Some of the pages are dated. Mrs. Worsham testified that pages were missing, and that they contained comments critical of how Respondent was proceeding with convincing Mr. Worsham's employer to stop the harassment. She said that one particular page was missing, and it contained the critical comment that Respondent had not returned Mr. Worsham's telephone call to Respondent. She also said that the missing pages had comments about Respondent not returning telephone calls. Mr. Worsham's son stated that a page was missing, and that it contained the remark that Respondent was not returning telephone calls. The Bar had another witness (Harden) that testified on the content of the pages.

¶ 51 Mrs. Worsham stated that she could not specify when she first noticed that the pages were missing, and did not recall when she first viewed them in the office of her new lawyer. The Bar did not show the date the pages were first alleged to be missing, nor which persons had access to the journal between the time Mrs. Worsham delivered it to Respondent and the discovery of missing pages. We agree with the PRT that the Bar did not establish by clear and convincing evidence that Respondent removed the missing pages.

¶ 52 The trial panel determined that Respondent submitted a letter to the Tulsa County Bar Association and the Oklahoma Bar Association stating therein that the Worshams' two petitions were not filed because of the acts of two law clerks, and that he believed that both had been filed. Respondent's letter stated that there was no mention in Worsham's journal that he was unhappy with Respondent's representation of him. The trial panel concluded that these facts showed that Respondent violated Rules of Professional Conduct 8.1(a) and 8.4(c) and Rule 5.2 of the Rules Governing Disciplinary Proceedings.

¶ 53 Respondent's letter to the Oklahoma Bar blames the law clerks for failing to file the petitions. He states that he instructed the first law clerk "to file the lawsuit in Tulsa County." He states unequivocally that he told the second law clerk "to file this lawsuit." Later in the letter he states that this failure to file the petitions "could have occurred if I told my law clerks to file this action and that [sic] thought that I merely wanted to file the pleadings in the client's file and not file the pleadings in court." He states that he doesn't know that this is what happened, but "I merely provide that as one possible scenario on how these events might have transpired."

¶ 54 The record contains the testimony of the two law clerks. One is now a member of the Oklahoma Bar and the other practices law in New Mexico. They testified that they were not instructed to file the petitions, and one described in detail the job description for a law clerk in Respondent's office. Respondent challenges the memory of one clerk and the honesty of another. The Bar introduced evidence to show that Respondent's accusation of dishonesty was not credible.

¶ 55 The evidence is clear and convincing that the journal showed that Mr. Worsham thought that contacting Respondent was difficult. But the testimony before the trial panel does not show any journal entry that Mr. Worsham thought there was something wrong in, or that he was unhappy with, Respondent's representation.

¶ 56 We do agree with the trial panel that the evidence is clear and convincing that Respondent represented to the Bar that he instructed law clerks to file the petitions, when he did not do so. This conduct is a misrepresentation in violation of Rule 8.4, a false statement of material fact in violation of Rule 8.1, and a deliberate misrepresentation of facts in violation of rule 5.2 of the Rules Governing Disciplinary Proceedings.[10]

¶ 57 We further note that when Respondent agreed to Represent Mr. Worsham he received $725, including $75 for payment of costs, that he deposited to his operating account. This act is commingling of his and his client's funds, and is a violation of Rule 1.15(a). *State ex rel. Oklahoma Bar Association v. Giger, supra.*

## V.

¶ 58 On the Hall grievance we have concluded that Respondent violated Rules of Professional Conduct, 1.1, 1.3, 1.4(a), 1.15(a), (b)(c), and 8.1(a) and 8.4(c). On the Barnes grievance we have concluded that violated Respondent violated Rules of Professional Conduct, 1.1, 1.3, 1.16(a)(5), and 3.2. On the Blair grievance we have concluded that Respondent violated Rules of Professional Conduct, 1.1, 1.3, 1.4(a), 1.16(a)(5), 3.2, 8.4(c). On the Worsham grievance we have concluded that Respondent violated Rules of Professional Conduct, Rule 1.1, Rule 1.3, 1.4(a),1.15(a), 8.1(a) and 8.4(c), and Rule 5.2 of the Rules Governing Disciplinary Proceedings. The appropriate discipline in this case is based upon a comparison with the discipline imposed upon other lawyers in similar circumstances. *State ex rel. Oklahoma Bar*

---

**10.** 5 O.S.2001 Ch. 1, App. 1–A, R.G.D.P., Rule 5.2:

5.2. Investigations

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

*Association v. Schraeder*, 2002 OK 51, ¶ 6, 51 P.3d 570, 574.

¶ 59 Failure to communicate with clients and to competently represent, and act with diligence have resulted in suspensions of thirty days and ninety days. See *State ex rel. Oklahoma Bar Association v. Vincent*, 2002 OK 40, 48 P.3d 797 (thirty days); *State ex rel. Oklahoma Bar Association v. Dershem*, 1999 OK 77, 990 P.2d 864 (ninety days). Failure to communicate coupled with an untimely client refund has resulted in suspension for sixty days. *State ex rel. Oklahoma Bar Association v. Benefield*, 2002 OK 37, 51 P.3d 1198. Multiple counts of violations of Rules 1.1, 1.3, 1.4, 3.2 combined with violations of Rules 1.16 and 8.4 and Rule 5.2 R.G.D.P. has resulted in a suspension of two years and one day.[11] Facts showing mitigation of discipline may result in less or no suspension although multiple counts are involved. *State ex rel. Oklahoma Bar Association v. Southern*, 2000 OK 88, 15 P.3d 1.

¶ 60 In mitigation of discipline Respondent discusses his implementation of management practices in his office that were suggested by the Bar. He points to his fifteen years of practice without any discipline, and that he has reduced his caseload. He states that he carries malpractice insurance, but that no client has, in his opinion, suffered a loss. He states that he now personally files all of his cases. He further points to his efforts to leave private practice for corporate or government employment.

¶ 61 The findings, conclusions and recommendations of the trial panel are neither binding nor persuasive. *State ex rel. Oklahoma Bar Association v. Schraeder*, 2002 OK 51, ¶ 5, 51 P.3d 570, 574. Our review of the proceedings is *de novo*. *Id*. We agree with the trial panel that an appropriate suspension is one year. Respondent is here-by suspended from the practice of law for one year commencing on the date this opinion is final.

## VI.

¶ 62 The Bar filed an application for costs in the amount of $5,047.93. Respondent objects to the following charges:

1. Travel Expense (airline ticket)—$243.00
2. Travel expense (car rental)—$69.02
3. Video deposition of K. Harden, Houston, TX—$328.75
4. Transcript of deposition of K. Harden, Houston, TX—$572.55
5. Expert Witness Expense Forensic Document Examiner)—$500.00

He further requests a 50% reduction because certain allegations of misconduct by the Bar were not found by the trial panel.

¶ 63 We have declined to assess costs when the Bar does not show that a lawyer violated an ethical rule.[12] *See State ex rel. Oklahoma Bar Association v. Armstrong*, 1992 OK 79, 848 P.2d 538, 540, *citing, State ex rel. Oklahoma Bar Association v. Watson*, 1989 OK 72, 773 P.2d 749, 751, where explained that the purpose of a rule was to assess costs against a respondent who was disciplined. We conclude that Respondent violated ethical rules. However, we agree that costs associated *solely* with allegations made, but not found by this Court should not be assessed against him.

¶ 64 The Bar states that an expert witness cost of $500 was incurred for a forensic document examiner to determine if Respondent removed a page from the collection of pages described as Mr. Worsham's journal. Respondent claims that no allegation of forgery by him was at issue, nor did the Bar use the report of the document examiner in

---

11. *State ex rel. Oklahoma Bar Association v. Minter*, 2001 OK 69, 37 P.3d 763. A case similar multiple violations also resulted in a suspension of two years and one day. *State ex rel. Oklahoma Bar Association v. Jenkins*, 2001 OK 54, 27 P.3d 91. *See also State ex rel. Oklahoma Bar Association v. Bolusky*, 2001 OK 26, 23 P.3d 268, (suspension for two years and one day).

12. *See, e.g., State ex rel. Oklahoma Bar Association v. Harper*, 2000 OK 6, ¶ 25, 995 P.2d 1143, 1148; *State ex rel. Oklahoma Bar Association v. Upton*, 1999 OK 92, ¶ 22, 991 P.2d 544, 548–549; *State ex rel. Oklahoma Bar Association v. Butner*, 1998 OK 132, ¶ 19, 976 P.2d 542, 545; *State ex rel. Oklahoma Bar Association v. Stilwell*, 1998 OK 120, ¶ 16, 990 P.2d 835, 838; *State ex rel. Oklahoma Bar Association v. Rouse*, 1998 OK 56, ¶ 12, 961 P.2d 204, 208.

any part of the trial panel hearing. This Court has determined that the allegation relating to Respondent's removal of a page is not supported by clear and convincing evidence. We agree that this cost should not be assessed against Respondent.

¶ 65 The deposition of Ms. Harden was introduced at the trial panel hearing without an explanation as its intended use. She testified of her review of the original journal and that pages were subsequently missing. She further testified that Mr. Worsham's statements in the journal questioning why Respondent was not returning phone calls indicated to her that Mr. Worsham was frustrated. Her conclusion was not based upon conversations with Worsham or her direct observations, but solely on her interpretation of the phrase. "Why won't Scott return my calls?"

¶ 66 We have concluded that the Bar did not show by clear and convincing evidence that Respondent removed journal pages. We agree that the costs of the deposition of Harden should not be assessed against Respondent in light of the Bar's failure to show that such costs are related to a violation of a rule of professional conduct or disciplinary rule.

¶ 67 We grant the application of the Bar to assess costs against respondent in the amount of $3,334.61. We deny Respondent's application to reduce the assessed by 50 per cent. The costs shall be paid within ninety days of the date this opinion becomes final.

¶ 68 WATT, C.J., HODGES, LAVENDER, HARGRAVE, BOUDREAU, JJ., concur.

¶ 69 KAUGER, WINCHESTER, JJ., concur in part, dissent in part.

¶ 70 OPALA, V.C.J., concurs in part, dissents in part. Concurs in the court's opinion but not in the degree of professional discipline which is imposed; he would *suspend* respondent's license to practice law for the period recommended by the Bar (two years and one day).